R. NIXON et al. *v.* R. PORTER et al.

1. EVIDENCE: ANCIENT DOCUMENT: PROOF OF EXECUTION.—The law presumes that the subscribing witnesses to a deed shown to be thirty years old, are either dead or beyond the jurisdiction of the court, or that they have forgotten the transaction, and therefore dispenses with their production to prove the due execution of the deed; in such a case proof of the genuineness of the signature of one of the subscribing witnesses is sufficient.
2. SAME: ANCIENT DOCUMENT.—Where the grantee, shortly after the date of a deed which is thirty years anterior to the trial, took possession of the land

which is believed to be the same conveyed in the deed, and retained the possession, though for a very short time, and the grantor, twenty years afterwards, acknowledged that he executed it on the day of its date, this is sufficient to show that the deed is an ancient document, so as to dispense with the production of the subscribing witnesses to prove its execution.

3. DEED: NOT VOID BECAUSE BOUNDARIES CANNOT BE IDENTIFIED.—A deed is not void for uncertainty because from the lapse of time it may be impossible to ascertain the boundaries or identify the land conveyed in it.

4. EVIDENCE: PRIVATE BOUNDARY PROVEN BY REPUTATION.—Private boundaries may be proven by common reputation, as well as by direct evidence, but in either case the proof must show the boundary with reasonable certainty.

5. SAME: WHEN DEED MADE UNDER A DECREE MAY BE READ WITHOUT PRODUCTION OF THE RECORD.—The plaintiff in an action of ejectment may introduce in evidence a deed to the defendant which purports to be executed under a decree in chancery, without producing an exemplification of the whole record in the chancery suit, where the object of the proof is to show that the defendant claims title under the deed. The rule is different where a party proposes to introduce such a deed to show an interest or title in himself; in that case, it is necessary to show the authority under which the deed was executed.

6. SAME: STATE PAPERS ADMISSIBLE AS EVIDENCE.—A volume of state papers published under the authority of Congress is a public record, and as such admissible in evidence.

ERROR to the Circuit Court of Hancock county. Hon. William M. Hancock, judge.

The defendants in error, claiming to be the heirs of John Porter, deceased, in October, 1854, brought their action, under the Pleading Act of 1850, against Rebecca Nixon and Samuel White, to recover possession of a certain tract of land situated in Hancock county.

On the trial, the plaintiffs below offered in evidence an instrument, purporting to be a deed made by Charles Nicaise, on the 23d day of September, A.D. 1816, conveying certain lands to said John Porter. This deed purported to have been acknowledged by the grantor, on the 26th of March, 1838, before John L. Brush, circuit clerk of said county of Hancock. The certificate of acknowledgment is signed by said Brush, but was without his seal of office. The subscribing witnesses to the deed were Henry B. Rapp, N. N. Wheeler, and Elihu Carver. The court, upon the objection of the defendants, refused to permit the deed to be read to the jury, upon

the acknowledgment before Brush, for the reason that his certificate was not verified by the seal of the court. The plaintiffs then proved by John L. Brush, Charles Farvè, and John B. Toulmè, that they were acquainted with the handwriting of the subscribing witness, Elihu Carver; that Carver was dead; that his signature as a witness to the deed was genuine. These witnesses did not know Rapp and Wheeler, the other subscribing witnesses. Brush also testified that Nicaise, on the 26th March, 1838, acknowledged the execution and delivering of the deed before him. This testimony, when offered, was objected to by the defendants, upon the ground that the subscribing witnesses ought to be produced, or proved to be dead. This objection was overruled, and the defendants excepted. The court held that the deed was sufficiently proven, and the plaintiffs being about to read it to the jury, the defendants objected further, upon the ground,—1st. That the boundaries in the deed did not correspond with those mentioned in the complaint, and 2d. That the deed was void, for uncertainty in describing the land conveyed. These objections were overruled, and the deed read to the jury, and the defendants excepted.

The land conveyed in the deed was therein described as follows: "The party of the first part grants, &c., to the party of the second part, his heirs, &c., forever (in his actual possession now being), all of that piece of land situate on the west side of the Bay St. Louis, bounded as follows: beginning at the southwest corner of the land of Lieut. Rapp, from thence running north, seventy-eight degrees west, twelve hundred toise, to a post; thence south, twelve degrees west, thirty toise, to a post; thence south, seventy-eight degrees east, twelve hundred toise, to the Bay St. Louis; thence northwardly, along the bay, to the place of beginning, containing forty arpents of land, be the same more or less."

The plaintiffs next offered in evidence a deed executed by P. Rutilius R. Pray, administrator of the estate of James Avery, deceased, to the defendant, Samuel White. This deed was dated on the 25th day of June, 1836, and purported, on its face, to have been executed in obedience to a decree of the Superior Court of Chancery, which is copied in the deed. This decree purports to have been made in a suit, wherein the defendant, Samuel White, was complainant, and said Pray, as administrator, was defendant,

and was rendered on the 16th of February, 1836. The decree recites that said White purchased two tracts of land, in the year 1828, from said Avery, who sold the same as tax collector of Hancock county, and that Avery had died without making a deed therefor; that one of the said tracts was sold as the property of John Porter, and the other as the property of John W. Addin, and it directs Pray to make a deed conveying the two tracts to White. The two tracts, thus conveyed, are described in the deed as follows: 1st. The Addie tract, "Situated in the town of Shieldsborough, in Hancock county, and bounded on the north by lands of Capt. Porter, and on the south by lands of Cadet Lafontaine, on the east by the Bay of St. Louis, and on the west by lands of the United States, being seven chains wide and forty arpents deep." 2d. The Porter tract is described as follows: "One other lot of land, owned by Capt. Porter, otherwise called Captain John Porter, situated in the town and county aforesaid, and bounded on the north by lands of Nathaniel W. Hyde, on the south by John W. Addin, on the east by the Bay of St. Louis, and on the west by lands of the United States."

Appended to the decree was a certified copy of the decree in chancery, referred to in it. To the introduction of this evidence the defendants objected,—1st. Because the whole record in the chancery suit was not produced; 2d. Because the deed did not purport to convey the same premises as those embraced in the deed from Nicaise to Porter. The court overruled the objection, and allowed the deed to be read to the jury, for the purpose of showing that the defendants claimed title from the same source as plaintiffs, to wit, John Porter; and the defendants excepted.

The plaintiffs then read in evidence a deed executed by the defendant White, on the 23d day of May, 1850, to the defendant, Nixon. The land conveyed in this deed is described as follows: "A certain tract of land, situated in Hancock county, and bounded on the south by lands belonging to the heirs of P. R. R. Pray, deceased (being the dividing line between said heirs and said White, as determined and established by an instrument of writing executed between said parties, the 9th day of March, 1849, and of record in Book F. of the Registry of Deeds for said county), and on the north by lands of the said White, on the east by the Bay of St.

Louis, and on the west by public lands; having a front on said bay of seventy feet, by forty arpents in depth, between parallel lines."

The plaintiff then introduced the following testimony to prove the boundaries of the land:—

1st. Charles Farvè stated that he had lived from his childhood in the immediate neighborhood of the premises in controversy, and that he was familiar with the lines and lots at Bay St. Louis; that in 1818, when he was about twenty-one years of age, he lived on a lot at the bay, known as "the Hyde lot," which adjoined a lot known as "the Porter lot;" that he knew the boundaries of "the Porter lot" from report; the northern boundary was run by witness and Elihu Carver, and it was bounded east by the sea-shore, and west by public lands; that when he and Carver ran said northern boundary, they found a post standing on the line, on which there were some letters; that this post stood about eighty yards from the sea-shore, but that the beach had washed away considerably since; that Carver and others said that the line run by witness and Carver was the north line of the Porter tract; that a clearing was made on the Porter tract, in 1818, by some sailors or soldiers belonging to the navy; that witness saw them at work, and they said they were Porter's men; the clearing joined the Hyde tract, and extended about an acre south of it, and run back from the front three or four acres; a log cabin was also put up, but it was never finished,—it was called "Porter's Hospital." Witness never saw, and did not know Porter. Lafontaine lived on the south of "the Porter lot," some two or three acres south of the "clearing." Witness was asked if the land embraced in the deed from Pray to White, was the same as "the Porter lot," to which he replied, that he did not know, but that he believed it was. Witness does not know how far south of the Hyde line Mrs. Nixon lives, but thinks her house is about an acre from the Hyde line, and on the south part of the clearing made by Porter's men.

The defendant made the following objections to this witness's testimony: 1st. To his statement in relation to the survey made by him and Carver, because the field-notes were the best evidences. 2d. To his statement in relation to the location of the northern boundary, because it appeared that said statement was not based

on his personal knowledge, but on information derived from Carver and others; and 3d. To his statement that the sailors at work on the clearing and cabin, told him they were "Porter's men." All these objections were overruled, and the defendants excepted.

Cross-examined: Witness could not say whether the line run by him and Carver was the same as that mentioned in the deed from Nicaise to Porter; witness did not know Lt. Rapp, or that he ever had any land at the Bay St. Louis; did not know of any such line as "Rapp's line," nor any other line there, except the one run by him and Carver; he did not know any such man as Addie, or any such land as Addie's land, at the bay: witness could not say that the "description in the two deeds, viz., that from Nicaise to Porter, and that from Pray to White, embraces the same land;" he did not see the post, mentioned as being on the northern line of Porter's tract, put up, and cannot recollect that any one told him that it was on said line, except Carver; that Hyde claimed under Williams, and he under Burgeois, who claimed under Nicaise.

2d. Edwin F. Russ: Witness states that his wife was one of the heirs of P. R. R. Pray, and that he and White run a line through the "Porter and Addie" tracts, nearly east and west, for the purpose of dividing them between the heirs of Pray and said White; witness could not say positively that the land so divided was the same as that described in the deed from Pray to White, but he thinks it is. The line was run between 1848 and 1856, and is south of Mrs. Nixon's house.

3d. Seth B. Pierce: Witness knew the situation of Mrs. Nixon's property, and believes her improvements to be on the tract described in the deed from Porter to Nicaise; this witness also testified as to the rent and the value of improvements made by Mrs. Nixon.

4th. James Johnson stated that his residence at the Bay St. Louis commenced in 1817, and has continued up to the present time. Witness never saw Porter, and never knew of his being at the bay, but he has heard of such a man as belonging to the navy. In 1817, the old log cabin, called Porter's Hospital, was rotting down; that Mrs. Nixon's house is a short distance from the Hyde tract. The land on which she lives has been wild and uncultivated from 1817 till she moved on it, in 1850, or 1851.

Cross-examined: Witness could not, upon reading the deed from

Nicaise to Porter, identify the lines called for in it, or any such tract of land at the Bay St. Louis; states that the old log cabin stood a short distance south of where Mrs. Nixon lives.

5th. W. T. Coons stated that he was a surveyor, and had been county surveyor of Hancock county; witness has made frequent surveys on the sea-coast, and at Bay St. Louis; that some of the old lines were run without making any allowance for the variation of the compass; some of the lines vary eight degrees from others; that the lines at the bay generally-run north seventy degrees west, but there is a variation of eight degrees between lines run in 1818 and now; that a "toise" is a Spanish-term of measurement.

Cross-examined. That if he knew the starting-point called for in the deed, he could run the lines.

On the point of the heirship of plaintiff, Bishop L. Polk stated he has known the children of Captain John Porter from the year 1829, but he did not know Porter-himself, or when he died, nor where he resided from the year 1816 up to the time of his death. He was a lieutenant and afterwards a captain in the United States Navy. Witness never heard of any other person by that name belonging to the navy. Witness was intimately acquainted with Porter's family; his wife's maiden name was Eliza Channey Clark. Witness believes that the plaintiffs are the only legal heirs of said Porter; had there been others witness thinks, that from his intimacy with the family, he would have heard of them. Witness does not know, of his own personal knowledge, that Captain Porter was at the Bay St. Louis in 1816, or that he was on the waters of Lake Borgne and Lake Pontchartrain during or after the year 1812; but he believes he was, having frequently heard so. Having long known the family intimately, witness is perfectly satisfied that the plaintiffs are the heirs at law of Captain John Porter: his wife was a member of witness's family for seven years. Lucien Waddel (one of the plaintiffs) is a son and only child of Lucia Porter, who was a daughter of Captain Porter. She married John Waddel and died in New Orleans, at the St. Charles Hotel, about the year 1840.

Cross-examined. Witness is fifty years of age, and is not related to plaintiff.

Mrs. Catharine P. Read. Witness became acquainted with Lieutenant John Porter at the Bay St. Louis in the summer of 1816; he was afterwards Captain Porter. His wife's maiden name was

Eliza Clark. Witness is not personally acquainted with any of Porter's children; she knows the plaintiff, Lucien Waddel; he is a son of Lucia Porter, a daughter of Captain Porter; she died in New Orleans, at the St. Charles Hotel, about 1840, leaving said Lucien her only issue. She married John Waddel. Witness "has heard the plaintiffs spoken of as the heirs of Captain Porter." This last statement was objected to by defendants, but the court overruled the objection, and permitted it to go to the jury as evidence.

Witness is sixty-five years of age and is remotely connected with the plaintiffs by marriage, "a cousin of theirs having married a niece of witness's.

After the plaintiffs closed their evidence, "the defendants offered to read in evidence from 3 American State Papers, Public Lands, 9, the following extract: "No. 22. Martial Nicaise and Joseph Nicaise. Original claimant, Philip Soucier. Spanish ord. Settlement. 27th August, 1781. 20 arpents, 40–800 arpents. Bay St. Louis. By whom issued, Peter Piernas. No. order survey. Date of cultivation and inhabitation, August, 1781, to 1813;" and to prove by parol that the lands sued for in this action are within said claim; and then to read the Act of Congress of the 3d of March, A.D. 1819, confirming said claim to said Martial and Joseph Nicaise, and to prove by parol evidence that said Martial and Joseph Nicaise died before 1818, the said Martial leaving nine children surviving him, all of whom are either alive, or have descendants living, and that Charles Nicaise, the grantor of Porter, was one of the children of said Martial, and that he had no other title to the premises except as heir aforesaid. This evidence was offered to show an outstanding title in the heirs of said Joseph and Martial except as to one-eighteenth part, which the said Charles had lawful right to convey. But the court refused to permit any of said evidence to go to the jury, holding that the defendants were estopped by the evidence offered by the plaintiff from setting up an outstanding title, or a defence to the action; to which ruling the defendants excepted. It is unnecessary to set out the instructions given and refused, as they were not noticed in the opinion of the court.

The plaintiffs had a verdict and judgment for the lands sued for.

The defendants moved for a new trial, which being refused, they excepted, and sued out this writ of error.

Nixon et al. *v.* Porter et al.

*W. P. Harris*, for plaintiffs in error,

Made the following points : 1. That plaintiffs below showed no title in Nicaise, their grantor, and the defendants were therefore entitled to a judgment. They were not estopped by the deed from Pray to White. Adams on Ejectment, 29 and 36 ; 3 S. & M. 118 ; Sheppard's Touchstone, 53 ; 2 Coke, 487 ; 3 Ib. 466 ; *Giles* v. *Pratt*, Hill (S. C.) R. 441 ; *Stevenson's heirs* v. *McReary*, 12 S. & M. 9 ; *Watkins* v. *Holman*, 16 Peters R. 25 ; *Bright's Lessee* v. *Rochester*, 7 Wheat. R. 535 ; *Smith* v. *Atley*, 26 Miss. R. 298 ; *Doe* v. *Pritchard*, 11 S. & M. 335 ; *Wolfe* v. *Dowell*, 13 Ib. 106 ; *Robinson* v. *Parker*, 3 Ib. 118.

2. The proof utterly fails to show that the land embraced in the deed from Nicaise to Porter is the land in controversy. There is no proof showing where the boundaries of that tract are, and for this reason the judgment must be reversed.

*J. C. Monet*, and *Champlin* and *Adams*, on same side.

1. The deed from Nicaise to Porter was not sufficiently proven to authorize its admission in evidence. 1 Greenl. Ev. § 569.

2. The description in the deed of the land is too vague and uncertain to convey any land ; the deed is therefore void. *Curtis* v. *Holly*, 3 How. Miss. 230.

3. The deed from Pray to White being made under a decree, could not properly be read in evidence, without a production of the record.

4. The exception taken to the deposition of Mrs. Read ought to have been sustained. The testimony objected to was clearly hearsay, and therefore illegal. 1 Greenl. Ev. §§ 103, 104, 105.

5. It was error to exclude, as evidence to the jury, the state papers, and the other testimony offered with them.

*F. Anderson* and *George S.* and *W. S. Yerger*, for defendants in error.

1. The deed from Nicaise to Porter was more than thirty years old, and the subscribing witnesses are presumed to be dead ; and it was therefore sufficiently proven. 1 Starkie Ev. 337–341, §§ 143, 144, part 2. Here proof was also made that Porter was in pos-

session shortly after its execution.    See 1 Phil. Ev. 477–479; also notes 903, 904, 905, 906.

2. The exception taken to the testimony of Mrs. Read is untenable. See 1 Phil. Ev. 238–240, and notes 458 to 466 inclusive.

3. Boundary may be proven by reputation.    Whatever may be the English rule, it is clear that American cases sustain the legality of the testimony of Farvè.    *Sasser* v. *Herring*, 3 Dev. R. 342; *Speer* v. *Coate*, 3 McCord. 227 ; *Blythe* v. *Sutherton*, Ib. 258; *Smith* v. *Nowells*, 2 Littell. R. 159 ; *Shepherd* v. *Thompson*, 4 N. H. R. 213; *Weems* v. *Disney*, 4 Harr. and McH. 156 ; *Howell* v. *Tilden*, 1 Ib. 84; *Long* v. *Pellett*, Ib. 533 ; 6 Binney R. 59 ; *Boardman* v. *Ried*, 6 Peters R. 341; 1 Phil. Ev. note 477.    But the defendants claim this land and other land by reference to the boundary of the Porter tract, and this makes the case clear against them on this point.    *Jackson* v. *McCall*, 10 Johns R. 377.

4. The American State Papers were properly excluded.    See 1 Stark. Ev. 155–158, §§ 33, 37, 42, part 2 ; 1 Phil. Ev. 424.

FISHER, J., delivered the opinion of the court.

This was an action brought by the plaintiffs below, under the Pleading Act of 1850, in the Circuit Court of Hancock county, to recover a tract of land, alleged to be in the possession of the defendants.

The plaintiffs claim as heirs-at-law of John Porter, deceased, to whom the land in controversy was conveyed in 1816, by one Charles Nicaise ; and the first error assigned relates to the admission of this deed, as evidence.    The circumstance of Porter's possession, in 1816 or 1818, of land, believed to be the same land conveyed by the deed, coupled with the acknowledgment of Nicaise, in 1838, that he had executed the deed at the time it bears date, was sufficient to characterize it as an ancient document, of more than thirty years' standing, and therefore to dispense with the strict rules of proof in the case.    The antiquity of the deed being established, the law presumes that the subscribing witnesses are either beyond the jurisdiction of the court or dead, or, if living, that their memories have failed them as to the particular transaction ; and hence, the deed may be established by other and inferior testimony.    We therefore do not think that the court erred on this point.

Again, it is said that the deed is void, for uncertainty as to the description of the land. That is certain, which may be rendered certain. It was only necessary to ascertain the southeast corner of Rapp's land, to fix the boundaries, by survey, of the whole tract. His corner was a fact (if true) which might be ascertained in the usual mode of ascertaining boundaries, either by direct proof, or by common reputation. Of course, as the certainty in the description of the land depends upon ascertaining the place of departure, it must follow that if this cannot be done with reasonable certainty, the land cannot now be ascertained; though it may have been capable of identity at the time the deed was executed. The deed is not void for uncertainty, though it may be impossible at this late date to identify the lands embraced in it.

It is next said, that the court erred in admitting the deed from Pray to White, for the purpose of showing that, as he claims under Porter, he admits his title. This deed was executed under a decree of the Superior Court of Chancery, and it was objected that the record should have been produced before reading the deed. As a general rule, when a deed is executed in virtue of a decree, or other power, the authority should be produced; but this is not necessary in this case. The plaintiffs did not claim under the deed; but the object was to show that White claimed under it, and having thus admitted the title of the plaintiff's ancestor, they were not bound to go beyond the deed of Nicaise, for the purpose of proving title. The deed was therefore competent; but it may have been insufficient for the purpose for which it was introduced. It may or may not be true that White claims under the deed, but this is a question of fact for the jury.

Again, it is said that the court erred in rejecting evidence offered by the defendants. The defendants offered the third volume of the American State Papers, entitled Public Lands, for the purpose of showing the extent of the interest of Charles Nicaise in the land in controversy, and the court rejected this evidence, on the ground that White was estopped by his deed from Pray. It is admitted, in argument, that this is an insufficient reason; that White was not estopped by the deed from Pray. But it is said that the evidence was, on other grounds, clearly incompetent, as it was, at most, of a secondary character. This point has been directly decided by the

Supreme Court of the United States, holding the evidence competent; and we will, therefore, without attempting to add anything to what has been said by that court, follow the rule there laid down. *Watkins* v. *Holman et al.*, 16 Peters, 55. The court below therefore erred in rejecting this evidence.

We may remark, upon the motion for a new trial, that, in our opinion, the evidence was insufficient to uphold the verdict. We are satisfied that boundary may be proved by reputation, or, in other words, by hearsay evidence; but this evidence must be as certain as to the subject-matter, as direct evidence would be if introduced. There is an utter want of certainty in the evidence to identify the land with the deed, under which the plaintiffs claim. The heirship of the plaintiffs is sufficiently proved.

Judgment reversed, and new trial granted.    •