W. E. PHILLIPS, et al. *v.* T. T. COOPER, et al.

1. PLEADINGS — DEFECTS THEREIN — WAIVER THEREOF. — A party going to trial without objecting to a defect in the pleadings cannot be heard to complain for the first time in the appellate court. Ample power is given by the statute to amend or correct any defect in the pleadings.

2. EVIDENCE — RECORD — GENERAL RULE. — The general rule is, that a record must be established by the highest attainable evidence. This rule is relaxed in most cases, so that proof may be made by copy. Records are allowed to be shown by the admissions of parties under certain circumstances, but with hesitation and caution.

3. SAME — SAME — ADMISSIONS. — Admissions of parties are admissible where there is not, in the judgment of the law, higher and better evidence in existence to be produced. A record cannot be proven by secondary or parol evidence, unless its loss or destruction be shown.

4. SAME — AFFIDAVIT AND BOND. — The recitals of an affidavit and bond do not assert the existence of valid judgments. They merely assert that the executions on their face purport to be issued on certain judgments. These recitals are not admissions made in open court, nor are they solemn admissions made in the course of judicial proceedings, and hence are not admissible to prove a record.

ERROR to the Circuit Court of Holmes County. Hon. C. C. SHACKELFORD, Judge.

The facts sufficiently appear in the opinion of the court.

*Harris & Withers*, for plaintiffs in error:

It is error to give instructions which are not called for by the evidence, because they tend to mislead the jury; creating in their minds the idea that in the opinion of the court there is such evidence. It is an assumption that such evidence is before them.

There was no evidence to show what amount of property Haywood Phillips owned at the time he sold the mules, nor what was the amount of his debts, and yet the court gives the absurd instruc-

tions on the 12th page, about the *circumstance* which the law considers in determining the *bona fides* of the sale.    What is the weight of this circumstance, especially where the purchaser does not know of the extent of the indebtedness, nor of the debtor's intention ?

The court improperly linked the sale of the wild, overflowed lands, with that of two mules, although they did not take place at the same time, and were entirely disconnected ; and besides, in this instruction, the last, the court, without any evidence except that twelve months subsequent to this sale, Haywood Phillips went into bankruptcy, directs the jury that if they believe he made the sale to enable him to take the benefit of the bankrupt law, the sale is void.    Thus inviting the jury to go on *coupeture*, and such is the effect of all purely abstract instructions.    Besides, this is not in acccordance with the spirit of the bankrupt law, which declares void only those sales made within six months prior to the bankruptcy.

But the refusal of the court to give the first instruction asked by the claimant is a palpable and fatal error.    It is difficult to understand the grounds of such refusal.    There can be no title tried without a levy by execution, on a judgment, and surely the property is not liable unless it be the property of the judgment debtor ; title in a third party other than the claimant defeats the levy. Thornhill v. Gilmer, 4 S. & M., 153.    Again, the evidence is manifestly insufficient to uphold the verdict.    There is no proof of any judgment execution or levy ; there is no evidence of fraud. There is to give to the plaintiffs evidence its full weight, nothing more than ground for conjecture or suspicion.    The jury could have been brought to the conclusion they reached only by the influence of the judge through his instructions.    There was no evidence of debt at the time, no evidence of the amount of property which Haywood Phillips owned, no evidence of any intention to take the benefit of the bankrupt act, or of knowledge by the claimant of such intention ; on the contrary, the plaintiff's own

witness states that the sale was made in good faith. The lands sold were worthless for cultivation, and when the witness Mercer spoke of the price, he meant to include the cultivated land including improvements. No one could say that wild land, subject to overflow, was worth $4 per acre in 1867.

The want of an issue is error, as this court has repeatedly held. Reporters find no brief in the record for defendants in error.

TARBELL, J., delivered the opinion of the court.

This is a contest to determine the right of property in four mules levied upon by the judgment creditors of Haywood Phillips. W. E. Phillips claimed the property and gave bond as required by statute. There were instructions given and refused, and verdict for plaintiffs in execution for two of the four mules. A motion for a new trial was overruled. The evidence and instructions, together with several objections and exceptions taken, are fully presented in the record.

The following are relied on as grounds of error: In going to trial without an issue made up under the direction of the court; in admitting claimant's affidavit and bond in evidence to prove the judgment, execution and levy; in refusing to give instructions asked by claimant; in granting instructions asked by plaintiffs in execution; and in overruling the motion for a new trial.

In a case like this, an issue is required to be made up between the parties, under the direction of the court. Code of 1857, p. 532, art. 295; Code of 1871, § 859.

There are no pleadings in the record, nor does it appear that there was any objection or exception to this; nor that the attention of the court was in any way called thereto, if, in fact, there was any neglect in this respect. The record recites the trial on issue joined. Doubtless there was an issue, though probably informal, nevertheless, sufficient. Under art. 180, p. 508, Code of 1857, there was ample power to amend or correct any defect or deficiency in the pleadings. If right in presuming there was

an issue, however informal, the defects are cured by art. 181, p. 508, Code of 1857; Code of 1871, § 622.

Having gone to trial without objection to the want of or to defect in the pleadings, or in some way calling the attention of the court to the matter, the party can not be heard to complain for the first time in the appellate court.   13 S. & M., 302; 14 id., 119; 6 id., 70; 1 How., 163; 3 id., 360; 4 id., 90; Learned v. Matthews, 40 Miss., 210; and other cases cited in George's Dig., pp. 375-7.

Among the instructions for the plaintiff are these:

"If the jury believe from the evidence that the money paid to S. M. Dyer for the two mules in controversy, was not the money of W. E. Phillips, then the law is for plaintiff, and they will so find as to the two mules bought of the sheriff of Yazoo."

"If they believe from the evidence that Haywood Phillips was largely indebted at the time, when it is claimed by W. E. Phillips, that he purchased the mules from his father, that is a circumstance the law considers in determining whether the sale was fraudulent or not."

"It is the duty of the jury to consider all the evidence which has been given in the cause, and if from the evidence they believe the mules were not purchased with the money of W. E. Phillips, the law is for the plaintiff, and they will so find."

"If they believe from the evidence that Haywood Phillips sold the land and mules with the intention of availing himself of the benefits of the bankrupt law, and that intention was known to W. E. Phillips, the sale was void, and they will find for the plaintiffs, although they may further believe from the evidence that W. E. Phillips paid the money for the mules."

With reference to these instructions, it is conceived that W. E. Phillips might have purchased the mules in question with money not his own, and yet have acquired a *bona fide*, legal and valid title, and in the most perfect good faith, though if purchased with the money of his father, Haywood Phillips, or otherwise in fraud of the creditor of the latter, then, indeed, the law and the

facts would have been with the plaintiffs in execution, but upon the naked proposition stated in the instructions, the court clearly erred. And so upon the two other propositions as to the indebtedness of Haywood Phillips, and his intention to take the benefit of the bankrupt law, the record contains no evidence upon which to base them. It follows that these several and evidently controlling instructions were erroneous.

On the facts, the record presents this state of case:

There is no evidence that the money with which the mules were purchased by W. E. Phillips, was not his own. The theory that he purchased them with the money of his father is unsupported by evidence, and rests wholly in conjecture or suspicion. The case rests almost entirely on the evidence of the claimant, introduced by the plaintiffs in execution. On their face, his statements are fair and consistent. He was unimpeached and unattacked, indeed, was not contradicted in any statement nor by any witness. There is no evidence that Haywood Phillips was indebted in any sum at the date of the sale of the mules; none whatever of his insolvency, or that W. E. Phillips knew of such insolvency; nor any that Haywood Phillips contemplated bankruptcy at the date of the transactions involved, or that W. E. Phillips had knowledge of such an intention. For aught that appears, Haywood Phillips became a bankrupt by operations subsequent to the sale or sales brought in question.

In this connection, it is proper to remark that no opinion is intended to be expressed beyond the proper criticism of the record as it now stands, nor is it designed to express an opinion upon the weight of the testimony which, when properly submitted to the jury, is within their peculiar province. Palpably controlling instructions were given, without evidence upon which to predicate them, while others, correctly embodying the case to be made out by the plaintiffs, were refused.

The instructions which follow, were requested by the claimant, but were refused by the court:

" The burthen of proof is on the plaintiffs in execution in this cause, and, unless the jury believe from the evidence that there were subsisting judgments against Haywood Phillips, and that executions regularly issued thereunder, and were levied on the property in controversy, and that said property, at the time of the levy, was the property of Haywood Phillips, then the law is for the claimants."

· " In order to invalidate the sale from Haywood Phillips, the jury must believe from the evidence, that there were judgments against Haywood Phillips, regularly enrolled in the county where the property was situated, and that the sale was made in fraud of the judgment creditors, and without valuable consideration, and the burthen of proof is on the plaintiffs in execution."

Upon what ground these instructions were refused, it is somewhat difficult to conceive. Certainly, it devolved upon the plaintiffs in execution to show judgments, execution, levy, and title to the property levied upon in Haywood Phillips. Code of 1857, p. 533, art. 298; Code of 1871, § 861. Technically, they would be improper, provided there was no evidence to support them.

But this was not the theory of the court below. The affidavit and bond of the claimant were admitted in evidence to prove judgments, executions and levy, and the title of W. E. Phillips was assailed on the idea that Haywood Phillips was the owner of the property. According to the view of the circuit judge, there was evidence of the judgments, executions and levy. If the recitals in the affidavit and bond of the claimant, being admitted, did not conclude or estop him, then the propriety of these instructions is too manifest for elucidation. It may be surmised, that the refusal to give them was upon the assumption of an estoppel.

If this view was taken, it was no less erroneous than the other; for, as will be shown, there is no element of estoppel in this case. At most, the affidavit and bond of the claimant were admissible, as tending to prove the facts for which they were offered; but,

even in this view, they were not conclusive, and, according to the text writers, the statements contained in the papers mentioned were ¸not more than " unconnected or casual representations." They were not pleadings in the cause; they were not solemn admissions for the purpose of evidence therein ; they were not representations which induced any action on the part of the plaintiff in execution; nor were they in the nature of agreements or receipts which recognize the existence of the judgments, executions and levy. Consequently, the doctrine of estoppel was improperly applied, even if the papers designated were admissible in evidence. The instructions refused announced correctly the propositions necessary to be maintained by the plaintiffs in execution to entitle them to recover. Could the judgments, execution and levy be shown in the mode proposed ?

The court is unaided in the determination of this case, by counsel, whose arguments contain no reference to authorities, nor to the provisions of the code.

An examination shows several adjudications in this state, substantially recognizing the rule hereafter stated as governing the case at bar: 1 How., 39 ; 3 ib., 165 ; 3 S. & M., 234 ; 10 ib., 549 ; 6 ib., 179 ; 7 ib., 111 ; 13 ib., 635 ; 25 Miss., 513 ; 31 ib., 546 ; 38 ib., 469 ; 41 ib., 240 ; ib., 358 ; 42 ib., 210 ; and perhaps others; but this being the first attempt in this state, as far as known at present, to prove a judgment, execution and levy by the affidavit and bond of a claimant to property seized in execution, it may be profitable to discuss the point in the light of the text writers and adjudications.

The general rule is quite familiar, that a record must be established by the highest and best attainable evidence which, literally enforced, involves the production of the record itself. 1 Greenl. on Ev., § 501 ; 1 Ph. on Ev., C. & H. & E. notes, 567, *et seq* ; id., 595 ; 1 Starkie Ev., 389.

This rule, however, is relaxed in most cases, so that this proof may be made by copy. 1 Greenl. on Ev., *supra.* Copies of re-

cords are (1), exemplifications; (2), copies made by an authorized officer; (3), sworn copies. Ib.   This rule is also relaxed when records are shown to be lost or destroyed, in which case they may be supplied by secondary evidence; but, ordinarily, in no other instance; *vide,* authorities herein.   1 Starkie Ev., 354, 394; 1 Ph. Ev. C. &. H. & E. notes, p. 596.   Records are allowed to be shown by the admissions of parties under circumstances, limited, defined and restricted by the authorities, and with hesitation and caution.   See foregoing authorities, and 1 Pb. Ev. C. & H. & E. notes, 462.   In note 129, ib., it is observed that " an admission is made, *first,* with a view to evidence; *secondly,* with a view to induce others to act upon the representation; or, *thirdly,* it is an unconnected or casual representation."   The affidavit and bond of claimant were not made with a view to evidence.   The plaintiffs in execution did not act on the representation therein, nor were they made to induce any action on their part.   They are, therefore, merely " unconnected or casual representations," for a specific purpose, which will be hereafter defined.

The principle of the rule that the law requires the highest evidence of which the nature of the thing is capable is founded on the presumption that there is something in the better evidence which is withheld, which would make against the party resorting to inferior evidence.   Ib., p. 568.   Commenting upon this text, in note 163, ib., it is said, " where a party proposes to introduce secondary evidence, under circumstances which clearly presuppose that higher evidence is within his power, it is very natural to presume that he does so from some secret and sinister motive, conscious, perhaps, that should the higher evidence be adduced, it would give a complexion to the case by no means favorable, if not adverse to his interest."   This is qualified in the same note (163), in this that the whole doctrine of secondary evidence, when applied to the common instance of the best evidence being proved to be unattainable, rests upon the same principle; all presumption of fraud is then, of course, repelled, and the rule, after first

disarming the parties of the means of imposition, suffers itself to be relaxed as circumstances in justice shall require, by the admission of the next best evidence.

The adjudications examined indicate the somewhat strict adherence of the courts to the rule just quoted. Jenna v. Joliffe, 6 Johns., 9, was an action of trover in which it was held that an admission, oral and out of court, that the property in question was taken by virtue of an attachment, does not make out a justification for the defendant who justifies under the attachment, but he must produce the record.

The Welland Canal Co. v. Hathaway, 8 Wend., 480, furnishes a strong illustration of the rigid application of the rule under consideration. Then the defendant had entered into a contract with the company, and given a receipt to them, in the name by which they were known ; yet held, that when such company sued as a corporation, the admissions implied by these acts of the defendant did not relieve them from proving that they were a corporation by the highest evidence. And Nelson, J., delivering the opinion of the court, says : "It may be laid down, I think, as an undeniable proposition, that the admissions of a party are competent evidence against himself, only in cases where parol evidence would be admissible to establish the same facts, or, in other words, where there is not in the judgment of the law, higher and better evidence in existence to be produced. It would be a dangerous innovation upon the rules of evidence, to give any greater effect to confessions or admissions of a party, unless in open court, and the tendency would be to dispense with the production of the most solemn documentary evidence."

In the text, 1 Ph. Ev., with C. & H. & E. notes, p. 580, it is stated, that the principle of the rule under review applies alike to the reception of oral testimony, and to the substitution of secondary written testimony. See, also, 2 id., p. 568 and note 474. The court, in Ingram v. Hall, 1 Hayw., 193, say that "this rule is always relaxed upon two grounds, either from absolute necessity,

or a necessity presumed from the common occurrences amongst mankind." ·

And, in U. S. v. Reyborn, 6 Peters, 367, Mr. J. Thompson well says: "Rules of evidence are adopted for practical purposes in the administration of justice, and must be so applied as to promote the ends for which they are designed."

The case at bar was tried in the same county and court, where some of the records involved ought to have been found. No reason is pretended why those records were not introduced as the highest and best evidence. The judgments are quite indefinitely stated in the affidavit and bond of the claimant, as in the counties of Yazoo and Holmes. The executions are·described with equal uncertainty. And, it is added, that there were "divers other" judgments and executions in the hands of the sheriff. No juris- · dictional, nor other fact, such as nature of action, amount, or date of filing, is given. The burthen of proof was upon the plaintiffs in execution. This proof involved the existence of valid judgments, executions, levy, and title to property in defendant in executions. Codes of 1857 and 1871, *supra*; 1 Ph. Ev., C. & H. & E. notes, p. 582.

The cases when the production of existing records has been dispensed with are well defined. In Foster v. Trull, 12 John., 456, a discontinuance was shown by a receipt and written settlement of the cause of action duly signed. Lyman v. Lyman, 11 Mass., 317, was an action upon a written receipt of property attached, and an undertaking to deliver it at a future day. *Held*, the parties were bound by their undertaking. Spencer v. Williams, 2 Vt., 209, was like the last case cited, and Lowry v. Cady, 4 Vt., 504, was also precisely similar. These indicate a class of cases not requiring the production of the record for the reasons stated therein. Cases involving the effect of recitals in deeds constitute a numerous class. These recitals are sometimes held to be estoppels, but, in others, are placed on the footing of ordinary evidence in a cause. 2 Ph. Ev., C. & H. & E. notes, 574–576; Bigelow on

Estoppel, 295, ch. 10, *Recitals ;* Reed v. McCourt, 41 N. Y., 435;
Herman's Law of Estoppel, ch. 9, secs. 238, 247, 248, 249; id.,
ch. 12 ; 1 Starkie Ev., 369 and notes; and cases in Turnipseed v.
Hudson, present term.

Neither a deed nor a sealed note can be proved by the mere
admission of a party, written or oral.     Downs v. Downs, 2 How.,
915 ; Chaplain v. Briscoe, 11 S. & M., 372 ; 34 Miss., 697 ; 1 Ph.
Ev., with C. & H. & E. notes, p. 425; 2 id., 532, 3, note 458 ; 1
Starkie Ev., 365, and cases cited in note.

It was well said in Eakin v. Vance, 10 S. & M., 549 : " Whether
it is competent thus to admit parol evidence, to supply the place
of a matter of record, which has been lost, is a question not free
from difficulty.     The weight of authority seems to be in favor of
its admissibility.     Many cases on this subject are cited in note
723, 3 Phillip's Evidence, 1067.     The rule deduced from them by
the annotators is, that generally, in case of a lost or destroyed
record, parol evidence is admissible of its contents, especially
when no higher evidence is shown to exist.     In 1 Greenleaf's Evi-
dence, 581, the rule is laid down in terms equally broad.     These
learned writers have cited very much the same adjudged cases.
By some of them they are sustained ; by others they are not, to
the full extent of the rule.     Following, then, the rule thus estab-
lished, we are inclined to hold, parol proof of the issuance and
due service of citations was admissible, in connection with clear
proof of loss, under circumstances not implicating the party
claiming the benefit of such testimony, in being instrumental in
the loss.

" But the defendants also offered to prove, by the witness, that
an order for the sale of the land was granted by the probate court.
If any such was made, it should have been placed on record, and
there is no pretense that the records of the court have been lost,
other than the citations.     Indeed, it does not appear, that such
order was not placed on record.     If it was, it could not be proved
by parol, unless the record containing it had been lost.     If it was

not, it cannot be supplied by parol proof. That would be to sub-stitute parol proof in lieu of record evidence, and to dispense with so much of the law as requires the proceedings of the probate courts to be recorded; to substitute witnesses for judgments." This is the language of the late Ch. J. Sharkey, and its similarity to that of Mr. J. Nelson, *supra*, is worthy of note.

To the introduction of the affidavit and bond of the claimant, as evidence of the judgments, executions and levy, the latter objected and excepted.

This action of the court below is assigned for error, and there is thus presented a distinct question for adjudication. The text writers and the adjudged cases consent to a certain conclusion, and this result will appear the more satisfactory and correct from a brief consideration of the character of the recitals in, and the objects of, the affidavit and bond of the claimant. They do not purport to assert substantive facts beyond the execution and levy. Of the executions they are merely descriptive, and of the judg-ments they are nothing more than the recital of the face of the execution. It is not their object or purpose to assert the existence of the judgments. The interpretation of the affidavit and bond is simply this, that the executions contain the references to the judgments mentioned. Notwithstanding the recitals of the affi-davit and bond, the execution might, in a proper case, be quashed on the motion of the claimant.

It is not the object of the affidavit and bond of the claimant to assert facts by way of evidence or to relieve the plaintiffs in execution of proof of valid judgments; but it is to prepare a case under the statute upon which an issue may be made to try the right of property. By the statute itself, *supra*, it devolves on the plaintiffs to show judgments, executions, levy and title in defendant in execution, and this must be done in accordance with the established rules. These rules have already been stated, one of which is, that records must be shown by the highest and best attainable evidence. *Vide*, authorities herein. After indorsement

and filing, the execution and levy become a part of the record.    15
Wend., 575 ; 1 Starkie Ev., 284 ; 3 Hawks, 25 ; 7 Greenl. Rep.,
236 ; 2 Ph. Ev., C. & H. & E. notes, 377.    As shown herein, the
rule is, that only when lost or destroyed can a record be proved
by parol or secondary evidence.  In the record under review,
however, there is no pretense of the loss or destruction of the
records, and they could not be established in the mode adopted
on the trial.

It would be a perversion of justice to construe the recitals of
the affidavit and bond as asserting the existence of valid judg-
ments.    In legal contemplation they merely assert that the exe-
cutions on their face purport to be issued on certain specified
judgments.    It is the language of the execution and not of the
claimant.    Those recitals are not, in terms, stated as admissions ;
they were not made " in open court ;" they are not *solemn admis-
sions*, or admissions *injudicio*, which have been made in the
course of judicial proceedings, either expressly and as a substi-
tute for proof of the fact, or tacitly, by pleading.    1 Greenleaf on
Ev., § 27.  They are not *unsolemn admissions, extra judicium,* which
have been *acted upon,* or have been made to influence the con-
duct of others, or to derive some advantage to the party, and
which cannot afterwards be denied without a breach of good
faith.    Ib.    They are not pleadings, and, therefore, not necessary
to be noticed by the adverse party by plea or demurrer.  Ib.  Nor
are those papers in the nature of receipts, agreements or con-
tracts, which are some of the conditions or circumstances under
which records and judicial writings may be established by secon-
dary evidence, and without which, admissions will not operate as
estoppels.    Herman on Estoppel, §§ 5, 6, 320, 335, 336, 414 ;
Bigelow on Estoppel, 614, 615, 609, 612 ; 1 Greenl. on Ev. ,§§
22–27, 96, 186, 205, 521 ; 1 Ph. Ev., C. & H. & E. notes, 453,
note 129, p. 462 ; 6 Paige's Ch. R., 62 ; Bigelow on Estoppel,
589, ch. 21 ; ib., p. 600, *Estoppel in Pais ;* Herman's Law of Est.,
ch. 12 ; id., ch. 2 ; ch. 8 ; ch. 9 ; 2 Starkie Ev., 27 et seq. ; 1 ib.,
Ph. Ev., C. & H. & E. notes, p. 453, note 129 ; ib., p. 162.

In the case at bar, no "necessity" was shown for the relaxation of the rule requiring the highest and best attainable evidence ; and, indeed, if a case were made admitting of secondary evidence, it is manifest that the recitals of the affidavit and bond of the claimant would not even tend to establish valid judgments. 1 Starkie Ev., 159 and notes; ib., 181; ib., 283; 1 Ph. Ev., C. & H. & E. notes, sec. 10, p. 402 et seq. and notes ; ib., 422; 425; 2 ib., p. 343 ; ib., p. 378; ib., p. 510, note 445 ; 3 ib., pp. 688, 689 ; 15 Pick., 40 ; 3 Sneed, 373 ; 17 Ill., 404 ; 3 Hill, 215 ; 15 Mo., 73 ; 12 John., 546 ; 13 ib., 529 ; Edmonstone v. Plaisted, 4 Esp., 160.

Judgment reversed, cause remanded and new trial awarded.