PEAKE v. CAMERON *et al., Appellants.*

DIVISION ONE.

1. **Homesteads and Exemptions.** A homestead is subject to attachment for debt incurred prior to its acquisition, but no attachment or execution can be levied on it for debt contracted by the claimant subsequent to its acquisition. (R. S. 1879, secs. 2689, 2695.)

2. ———. A purchaser at an execution sale of a homestead under an attachment for a debt incurred by the claimant after its acquisition, who also holds by deed from the homestead claimant executed subsequent to the sale, will take no title as against a purchaser under an attachment levied before the execution of the deed for a debt contracted prior to the acquisition of the homestead.

3. ———. It makes no difference in such case which attachment was first levied.

4. ——— : ASSERTION OF CLAIM. The occupation of a homestead by the claimant and his family as a home is a sufficient assertion of the homestead right therein. This is especially true where the property does not exceed in extent or value the limit fixed by law for a homestead.

5. ——— : ———. It makes no difference in such case that the deed was made to the wife instead of to the husband.

*Appeal from Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

Peake v. Cameron.

AFFIRMED.

*W. H. Phelps* and *E. O. Brown* for appellants.

(1) The attachment by Garrett & Gilliland, as soon as levied, became a specific lien, with the same effect as if the title had not been taken in the name of Green's wife. Drake on Attachment [6 Ed.] sec. 239; *McKinney v. Bank*, 104 Ill. 180; *Slattery v. Jones*, 96 Mo. 216. The deed and title acquired by Gaither at the execution sale related back to the levy of attachment and cut out all intervening liens, including the Peake attachment. *Durrett v. Hules*, 67 Mo. 201; *Bank v. Marnard*, 51 Mo. 548; *Hall v. Stephens*, 65 Mo. 670; *Huxley v. Harrold*, 62 Mo. 516; *Slattery v. Jones*, 96 Mo. 216; Freeman on Executions. sec. 196. (2) The attaching creditors may rest exclusively upon their legal remedies without invoking the aid of a court of equity, and, as between such creditors, the junior lienholder acquires no preference or priority by proceedings to enforce the same, to which the senior attaching creditors are not parties; and the purchaser at an execution sale upon the junior attachment takes subject to the lien of the senior attachment. *Jackson v. Holbrook*, 32 N. W. Rep. (Minn.) 852; *Bank v. Risley*, 19 N. Y. 374; *Darby v. Yale*, 13 Hun. 278; *Bank v. Farthing*, 101 N. Y. 347; *Erickson v. Quinn*, 15 Abb. Pr. (N. Y.) 58. Where the law gives priority, equity will not destroy it; especially where, as in this case, the statute provides that equitable as well as legal interests are subject to seizure and sale upon attachment and execution. R. S., sec. 2354; Bump on Fraud. Con. [3 Ed.] 474; *Bobb v. Woodward*, 50 Mo. 101; *Codwise v. Gelston*, 10 Johns. 522. Whatever title was acquired by Peake, by virtue of his proceeding to divest title, etc., was held in subordination to the Garrett & Gilliland attachment. *Ins. Co. v. Cravens*, 69 Mo. 72. (3) The rule in this state is, and our statute expressly

declares, that every conveyance of land made with the intent to defraud creditors, etc., "shall be, from henceforth, deemed and taken as against said creditors and purchasers, prior and subsequent, * * * to be clearly and utterly void." R. S., sec. 2497; *Slattery v. Jones*, 96 Mo. 216. (4) Green never acquired a homestead in the premises in controversy, the deed having been made to his wife. Green is not claiming any exemption, and it does not lie in plaintiff's mouth to do it for him. *Schindler v. Givens*, 63 Mo. 394; *Griswold v. Johnson*, 22 Mo. App. 466; R. S., sec. 2695.

*Harding & Buller* for respondent.

(1) The title to the lot having been in Mrs. Green it was *prima facie* exempt from attachment for the sole debt of her husband. R. S., sec. 3295. If held in fraud of her husband's creditors, her title could only be divested by proceedings in equity. If defendants relied upon fraud they would have to set it up in their answer and prove it. *Clark v. Rinex*, 53 Mo. 380; *Gilchell v. Mesmer*, 87 Mo. 131. (2) As to subsequent creditors it is not sufficient to show that the conveyance was voluntary and even that the grantor was insolvent at the time; it must be shown specifically that the property was conveyed with intent to defraud such subsequent creditor. *Bank v. Overall*, 90 Mo. 410; *Payne v. Stanton*, 59 Mo. 159, and cases cited. (3) Peake was a prior creditor, and the conveyance to Mrs. Green might well have been fraudulent as to him while perfectly valid as to the Garrett & Gilliland claim. *Payne v. Stanton, supra.* And Mr. Gaither evidently so regarded it, for he did not attempt to attack it, but on the contrary recognized its validity and, while he only paid $210 for the sheriff's deed, he paid $800 for Mrs. Green's title. (4) The defendants' answers do not set up fraud; they are merely a general denial. Neither was there any evidence of fraud introduced by defendants. (5) As to the point that the attachment was a

declaration of intention to attack the title for fraud, this court holds that it is no more so than the taking of a judgment, nor the levy of an execution. *Slattery v. Jones*, 96 Mo. 216. (6) The principle seems to be well established in this court that where there are several judgments or other legal liens upon the same property, which are unavailable at law, then the creditor who first files his bill in equity thereby acquires a priority as to the property charged in the bill. *Jackman v. Robinson,* 64 Mo. 292; *George v. Williamson*, 26 Mo. 190; *Weed v. Pierce*, 9 Cow. 721; *Conroy v. White*, 2 Paige, 567. And nothing in the case of *Slattery v. Jones*, which seems to be relied on by appellants, conflicts with this doctrine. Moreover, both these attachments were levied. on the same day, and there is nothing in the statute making the time of filing the abstract of attachment in the recorder's office the test of priority, as between attaching creditors. (7) The Peake debt was contracted in 1871. The lot in question was conveyed to Mrs. Green in 1881, so that as to Peake they could not set up the homestead 'right. R. S., sec. 2695; *Davis v. Land*, 88 Mo. 436. The debt of Garrett & Gilliland was not contracted until 1882, so that if any homestead existed at all it was exempt from their attachment. R. S., sec. 2689. That Green could claim a homestead in the lot as to Garrett & Gilliland we think is beyond question. The statute does not require the deed to be to the claimant, and it should be liberally construed. R. S., sec. 2689; *Vogler v. Montgomery*, 54 Mo. 574; *Stamm v. Stamm*, 11 Mo. App. 598. Section 2695 is only intended to fix the time when the right of homestead accrues, and for that purpose a deed to the wife would be as effective as to the husband. The homestead right is not a mere personal privilege. It is an absolute exemption, so that a levy made thereon is void as to the whole world. *Davis v. Land*, 88 Mo. 436; *Buck v. Ashbrook*, 59 Mo. 200. Neither is a homestead capable of being the subject of a fraudulent conveyance. The

debtor can do with it as he pleases and creditors cannot touch it. *Davis v. Land, supra; State ex rel. v. Diveling*, 66 Mo. 375 ; *Boggs v. Thompson*, 13 Nebraska, 303 ; *Allen v. Berry*, 56 Wis. 178. Aside from the homestead question plaintiff showed a good title, so that, even if this court should differ with the circuit court on that branch of the case, the judgment would still be for the right party and should be affirmed. *Hammond v. Johnson*, 93 Mo. 198.

SHERWOOD, P. J.—Ejectment brought in 1886 for a lot in Carthage. The separate answers of the defendants were general denials. Cameron, one of the defendants, was in possession of the lot at the time of suit brought, as tenant of Gaither, who was made a party defendant on his own motion.

The salient facts in which this litigation arose are as follows :

One McGregor conveyed the lot in controversy to one Mary Green, wife of H. P. Green. This conveyance was made May 21, 1881, and recorded June 2, next thereafter. This conveyance was made at the instance of the husband, the purchase money being furnished by him, and was made to defraud his creditors. At that time Green was indebted to plaintiff as evidenced by a promissory note for $436.98, dated September, 1871, on which note were several credits for payments made thereon during the year 1881. Green and wife and family were in possession of the lot when the same was attached at the suit of Garrett & Gilliland on December 21, 1882, for groceries sold to Green in that year. What was the ground of this attachment does not appear. On the same day plaintiff also had the same lot attached at his suit, and it would seem this attachment was levied after the levy of the one already mentioned.

Judgments by default were duly rendered in each case, and on the twelfth of March, 1884, the said Peake commenced suit in equity in said court against said

Peake v. Cameron.

Green and wife, to which suit neither Garrett, Gilliland nor Gaither were made parties, to subject the said lot to sale for the payment of his said note on the ground that it was conveyed to her in fraud of his rights as an existing creditor of Green, which suit was duly prosecuted and a decree rendered therein at the March term, 1885, declaring the conveyance to Mary M. Green fraudulent as to Peake, and that the said property was trust property in her hands, and decreeing a sale thereof to satisfy the said judgment in favor of Peake, upon which decree an execution duly issued and the property was sold at the October term following by the sheriff and bought by the plaintiff, to whom a deed was executed by that officer.

The *lis pendens* was filed March 12, 1884, and on the thirteenth of March, 1884, the property was sold under execution in favor of Garrett & Gilliland, and purchased by the defendant Gaither, for $210, and on the twenty-fourth of July, 1884, defendant Gaither procured a general warranty deed from Green and wife for the lot, for which he paid them $800. The lot was sixty by one hundred and ninety feet in size, and worth not more than $1,500, and was occupied by Green and his family as a homestead until they sold it to defendant Gaither, when they surrendered the possession to him. Possession was admitted by the defendants and it was agreed that the rental value of the property was $8 per month.

The cause was tried without the intervention of a jury, and among the declarations of law given at the instance of the plaintiff was this one:

" A homestead is absolutely and unconditionally exempt from attachment while occupied as such, as to all causes of action arising after the acquisition of such homestead, and the filing of the deed thereof for record, in the proper county, and any levy or attempted levy of such attachment is void."

The court found for the plaintiff, and the defendants have appealed from the judgment rendered.

It is quite immaterial to inquire whose attachment had priority of levy on the lot in suit, because as to the plaintiff, the prior creditor of Green, there was *no homestead* to obstruct the operation of his writ of attachment, and the proceedings subsequent thereto ; and because as to Garrett & Gilliland, the subsequent creditors, there *was* a homestead upon which, according to express statutory provisions and prohibitions, no attachment or execution could be levied.   R. S. 1879, secs. 2695, 2689 ; *Vogler v. Montgomery*, 54 Mo. 577. Under the operation of such specific and stringent statutory provisions, the attachment writ of the first levying but subsequent creditors had no more force or effect in law, upon the homestead lot, than would a writ of *ca. sa.* for debt upon the debtor's person.

And the lot being visibly occupied by Green and family as a home, this was a sufficient and the usual assertion of a homestead right therein.   Thompson on Homesteads, sec. 230.   Even where the statute requires that the debtor make claim of homestead where it is levied on, it has been held that such statutes are but directory.   Thompson on Homesteads, sec. 639.

This is especially true in the present instance, where, as here, the property did not exceed in extent or value the limit fixed by law for a homestead.   In such case the most apt method of designating a place as a homestead would be the visible occupancy of the property as a homestead in fact.   Thompson on Homesteads, secs. 652, 653.

Nor are these views at all affected by reason of the circumstance that the deed was made to the wife instead of the husband.   There are numerous authorities on this point.   *Dreutzer v. Bell*, 11 Wis. 114; *Orr v. Shraft*, 22 Mich. 260 ; *Crane v. Waggoner*, 33 Ind. 83 ; *Porter v. Stewart*, 50 Miss. 727 ; Thompson on Homesteads, secs. 220, 221, 222, 224.

As to Gaither, the purchaser at the first execution sale and the subsequent purchaser from Green and wife, the horizon of his legal rights was not more expanded than those under whom he thought to derive title.

These views result in affirming the judgment. BLACK and BRACE, JJ., concur; BARCLAY, J., not voting.

