SHARP to use, etc., Appellant, v. STEWART et al.

### Division Two, December 24, 1904.

1. **HOMESTEAD: Life Estate.** A homestead may exist in a life estate.

2. ———: **In Wife's Land.** Where the title to the land is in the wife and her husband has made no claim of exemption or homestead rights for the protection of his property, the wife is authorized to make such claim of exemption in land in which she had a life interest, for herself and children.

3. ———: ———: **Devise: Partition.** Title acquired by devise is to be dated from the date the devise went into effect and not from the date of the partition decree by which the share of each devisee was set off to him in severalty.

4. ———: **Devise: Partition: Occupancy: Prior Debts.** Where land is acquired by devise and is subsequently partitioned and the devisee thereafter enters upon the part thereby set off to him in severalty, his homestead therein begins, not at the date of actual occupancy, but at the date on which he acquired the title under the devise. So that where land was devised to two daughters in 1885, and one of them contracted a debt in 1893 and judgment was rendered against her in 1895, and in 1898 there was partition of the estate and the land in question was set off to her, and she thereupon moved upon the same with her family, her homestead therein dated from 1885, and was not subject to execution sale under the judgment in 1901—her husband having claimed no exemption or homestead right and neither of them previously any homestead right in any other property.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

AFFIRMED.

*George W. Emerson* for appellant.

The lands at the time of the sale were the homestead of the Stewarts, but under the provisions of section 3622, Revised Statutes 1899, said homestead was

not exempt against the debt contracted in 1893. Conceding that the filing of the Jamison will in 1885 invested Anna B. Stewart with the title to this land, still she had no homestead until she actually occupied the lands as a homestead, which was in "the latter part of 1898," five years after the date of contracting the debt upon which the judgment and sale were had. Rouse v. Caton, 168 Mo. 296; Brew. Assn. v. Howard, 150 Mo. 451; Feurt v. Caster, 174 Mo. 289; Zollinger v. Dunnaway, 78 S. W. 666; Holland v. Rongey, 168 Mo. 16.

*Elliott W. Major* for respondents.

(1) A homestead can be claimed in a life estate. Kendall v. Powers, 96 Mo. 142. (2) As Anthony W. Stewart had not claimed any exemption and homestead rights for the protection of his own property, his wife then had a right to invoke all exemption and homestead laws for the protection of her property, and entitled to claim a homestead in her lands sold. R. S. 1899, sec. 4335; Gladney v. Berkley, 75 Mo. App. 98. (3) Mrs. Stewart acquired her title to the lands in 1885 by devise from her father, and when divided in kind in 1898 her title to the specified lands set apart to her in the partition proceedings related back and dated from the time of the devise. The action of the court in holding that the partition proceedings related back and that her title to the specified lands set apart was therefore acquired by devise in 1885 has been held to be the law by this honorable court and is not questioned. Brew. Assn. v. Howard, 150 Mo. 451; Finnegan v. Prindeville, 83 Mo. 521.

FOX, J.—"This is an appeal from the circuit court of Pike county wherein the appellant complains of the action of the trial court in sustaining respondents' motion to set aside the sale of real estate, made

under an *alias* execution, for failure of the sheriff to allow and set aside a homestead to respondents.

"The facts in this case are substantially as follows:

"James C. Jamison, deceased, by his last will, which was probated in Pike county, Missouri, November 18, 1885, devised to his widow and his two daughters, Anna B. Stewart, respondent herein, and Ada L. White, certain lands in Pike county, Missouri, including the lands involved in this case. In 1893 Anna B. Stewart and Anthony W. Stewart, her husband, respondents herein, executed a note to Evelyn L. Sharp for the sum of $500, upon which said note she obtained judgment for the sum of $520 in the circuit court of Pike county on the third day of December, 1895. Afterwards, and on the twenty-sixth day of October, 1899, and April 13, 1890, said respondents executed two separate deeds of trust upon the lands involved herein to E. W. Major, securing notes to the said Major for the total sum of $900, and being for money loaned to said respondents by him at said times, and which said notes were due and unpaid at the time of the sale of said lands hereinafter mentioned.

"June 30, 1898, the lands herein mentioned in the will of the said James C. Jamison were partitioned in kind in the circuit court of Pike county, and the lands involved in this case were set off by commissioners to Anna B. Stewart, she taking a life estate in said lands under the terms of said will, the same having been devised to her and her bodily heirs, and the report of the commissioners in said partition proceedings was duly filed in the recorder's office of Pike county, Missouri, in 1898. In the spring or summer of 1899, the respondents, together with their minor children, moved upon the lands set apart to Anna B. Stewart and occupied same continuously as their homestead from that time until the present.

"On January 26, 1897, Evelyn L. Sharp entered

into a contract with one William A. Richards, which contract is set out in the finding of facts by the court, and wherein she agreed to assign said judgment to said Richards upon the payment of certain sums or to satisfy the judgment record as the said Richards might desire.    Afterwards, and in 1899, Evelyn L. Sharp died and I. C. Dempsey was appointed her administrator and sued Richards as such administrator and collected the money from him on said contract. I. C. Dempsey then as administrator of the estate of Evelyn L. Sharp, and without any order of the probate court, on the fourteenth day of November, 1900, assigned the said judgment of Evelyn L. Sharp v. Anna B. Stewart and others, to the said William A. Richards.

"On the said fourteenth day of November, 1900, the said Richards caused an *alias* execution to be issued on said judgment so assigned by the said I. C. Dempsey, administrator of Evelyn L. Sharp's estate, to him, and the lands involved herein were levied upon by the sheriff of Pike county and advertised for sale and were sold by him and the lands were purchased at said sale by the said William A. Richards for $210.

"The lands in controversy were occupied by the respondents as a homestead and are contiguous tracts. The sheriff prior to the levy of the *alias* execution failed to notify the respondents or either of them of such fact and failed to do so at any other time.    Neither Anna B. Stewart nor her husband Anthony W. Stewart refused to designate or choose that part of real estate levied upon which they would claim and hold as a homestead or designate or hold and claim as a homestead. The sheriff did not set apart to respondents or either of them a homestead out of said lands levied upon, nor did he appoint appraisers to fix the location and boundaries of said homestead, nor make any attempt to do so either prior to said levy or thereafter, or to take into consideration in the matter of said homestead the

deeds of trust thereon and covering said lands and held by Elliott W. Major.

"Prior to the time of sale the said Anna B. Stewart served upon the sheriff a notice that she claimed a homestead out of said real estate levied upon, and that she was living in the mansion house of said property, and had been living upon same and using same continuously since the spring of 1899, and asked that her homestead be set apart to her, and also other lands in lieu of the $300 worth of personal property under the statutes, and that appraisers be appointed to locate and set apart homestead, etc. The sheriff failed and refused to set apart the homestead, but proceeded and sold the lands in question under said levy and *alias* execution, and the same was purchased by the said William A. Richards, to whose use and benefit said *alias* *execution* had been issued, and executed to said Richards his deed therefor.

"Anthony W. Stewart, the husband, had not claimed any homestead or other exemption rights at any time against this execution or any other execution for the protection of his own property, and had not claimed any homestead or other exemption rights against any execution or attachment since his marriage for the protection of his own property.

"Anna B. Stewart, in her notice to the said sheriff, made and designated the real estate to be held and used as a homestead, which was the land sold under the *alias* execution, and which were contiguous tracts and used together and upon which respondents lived in their mansion house and used as their homestead continuously since the spring of 1899, being nearly two years prior to said levy and sale.

"Respondents, after the sale of said lands by the sheriff and during the same term of court, filed a motion to set aside this sale, and the court, after hearing the evidence, sustained the motion upon the ground that the respondent was entitled to a homestead in the

lands so sold, and for failure of sheriff to allow and set aside said "homestead."

At the close of the evidence the court at the request of the plaintiff made the following finding of the facts, and announced its conclusions of law upon such finding:

"Prior to November 19, 1885, said Jamison died seized in fee of the land in controversy, together with other lands. November 19, 1885, the last will of said Jamison was duly admitted to probate by the probate court of Pike county, Missouri. By devise, under said will, the defendant Annie B. Stewart, who is a daughter of said Jamison, deceased, became invested with the title to an undivided one-half interest in said lands for and during her natural life, subject to the dower interest of the widow in said lands. In 1895, a judgment for $520 was rendered in the circuit court of Pike county, in favor of Evelyn L. Sharp and against Anna B. Stewart and her husband, Anthony W. Stewart (the defendants in this action). January 26, 1897, the said Evelyn L. Sharp and William A. Richards (the plaintiff herein) entered into a written contract in words and figures as follows:

"January 26, 1897.

"In consideration of Mrs. E. L. Sharp withholding ejectment suit for the interest of Mrs. Anna B. Stewart certain lands in Calumet township in Pike county, Missouri, which I have leased and rented, I hereby agree to pay Mrs. Sharp $100 cash and $200 on or before 15th day of August, 1897, as evidenced by note of this date, and $250 on or before August 15, 1898, the same to be applied as payment on a judgment in favor of said Mrs. Sharp and against Mrs. Anna B. Stewart and A. W. Stewart in Pike circuit court. Provided, that if by reason of the death of said Mrs. Stewart I do not have the use of said lands for year 1898 then said $250 are not to be paid and said Mrs. Sharp agrees whenever all the above payments have

been made to assign said judgment to said Richards undersigned or to satisfy same on the records as may be desired by said Richards.

"Mrs. E. L. Sharp,
"Per G. W. Emerson, her Atty.
"W. A. Richards.

"At the time of the death of her father, Mrs. Anna B. Stewart was not residing upon the land in controversy; nor did she reside on the same until the latter part of the year 1898 when she and her said husband, together with their minor children, moved onto said land and have since then continuously resided on same in the dwelling or mansion house situated on said lands.

"Prior to the moving of said Stewart upon said land, by decree of partition in kind among the devisees claiming under the will of said James C. Jamison, deceased, rendered by the Pike circuit court in December, 1898, the land in controversy was adjudged, set aside and confirmed to said Anna B. Stewart for and during her natural life with remainder over to her bodily heirs, and free from the dower interest of Mrs. Jamison which was allowed and set apart in other land.

"After the execution of the Sharp-Richards contract and prior to January 22, 1900, the said Mrs. Evelyn L. Sharp died, and I. C. Dempsey was duly appointed administrator of her estate and duly qualified and acted as such administrator.

"January 22, 1900, I. C. Dempsey, as administrator of the Evelyn Sharp estate, instituted suit in the Pike circuit court against William A. Richards for the amount then due under the said Sharp-Richards contract, and recovered judgment for the same; and thereafter said Richards, having paid to the said administrator the balance of the purchase price agreed upon between the parties to the said contract for the said Sharp-Stewart judgment, the same was by entry of record assigned by said administrator to said Rich-

ards, the plaintiff in this action. Thereafter, on the twentieth day of November, 1900, said Richards caused to be issued by the circuit clerk of Pike county, an *alias* execution on said jugdment, and placed the same for service in the hands of Henry M. Hopke, then sheriff of said Pike county, said execution being issued for the use and benefit of said William A. Richards, and the same was levied upon the land in controversy, together with other land in which defendant Anna B. Stewart had a life estate. The court further finds that under said contract the said Richards upon payment of said contract price became the owner of said judgment and entitled to an assignment of the same by the administrator of the Evelyn Sharp estate, and the fact that there was no order of the probate court in the premises did not deprive said Richards of his ownership of said judgment upon the payment of the price agreed upon. Said judgment could no longer be deemed an asset of the estate.

"The court further finds that the land in controversy and said other lands levied on are contiguous tracts; that the sheriff did not, prior to the levy of said execution on said lands, nor at any other time, notify the defendants, or either of them, of the same; that neither Anna B. Stewart nor her husband, Anthony W. Stewart, refused to designate or choose that part of said real estate levied upon which they would claim and hold as a homestead, or designate or hold and claim as a homestead out of said lands levied upon; that said sheriff did not set apart to Anthony W. Stewart and Annie B. Stewart, nor to either of them, a homestead out of the lands levied upon, nor did said sheriff appoint appraisers to fix the location and boundaries of said homestead, nor make any attempt to do so, prior to said levy or thereafter; that after the levy and prior to the sale by the sheriff of the lands levied on, defendant, Annie B. Stewart, served upon said sheriff a notice that she claimed a

homestead out of said real estate levied upon; said no-
tice being served on the seventh day of December, 1900;
that after the service of said notice upon said sheriff
he failed and refused to set apart a homestead and to
appoint appraisers to set apart the same to said Annie
B. Stewart out of said lands or to fix the location or
boundaries thereof, and to take into consideration the
deeds of trust which were a prior lien on said lands, one
of said deeds of trust having been executed by said
Annie B. Stewart and her said husband to E. W. Major
as beneficiary to secure the payment of a note for $600,
and the second being a deed of trust from said Annie
Stewart and her husband to E. W. Major, securing a
note for $300; that the note secured by the first deed
of trust mentioned matured prior to the institution of
this suit; that at the time of the levy and at the time
of the sale under said *alias* execution defendants actu-
ally occupied the real estate levied upon; that Anthony
W. Stewart has not claimed any exemption against
said execution nor against any writ of attachment, and
that at the time of said *alias* execution issued for the
use and benefit of William A. Richards the defendants
were living upon the real estate involved in this suit
and using and occupying the same; that said sheriff ad-
vertised said lands in controversy, and the said other
land levied upon under said execution, for sale under
said execution on December 7, 1900, at the courthouse
door in the city of Bowling Green, Pike county, Mis-
souri, and did on said day sell the land in controversy
and other land levied upon, to satisfy said execution
and costs, and at the said sale, time and place the same
was purchased by plaintiff for the sum of $210, and that
Henry M. Hopke, as sheriff aforesaid, executed, ac-
knowledged and delivered to plaintiff for the considera-
tion aforesaid, a deed purporting to convey to plaintiff
the interest of defendants in the land in controversy
and other lands.

"That by devise under her father's will the said

Annie B. Stewart became invested with her title to the land in controversy; her title to the specific lands set apart to her in the partition proceeding to be deemed and held as relating back and dating from the devise.

"That the life interest in the wife was such an interest as would have supported a claim by the husband to a homestead interest in the land, and he not having claimed such right for the protection of his own property the wife had the right to invoke the homestead law for the protection of her real property under section 4335, Revised Statutes 1899.

"The court finds the issues for the defendant. Motion is sustained to the extent of setting aside sheriff's sale under execution for failure of sheriff to allow and set aside homestead."

From the judgment of the court, sustaining the motion to set aside the sale, the plaintiff prosecuted this appeal, and the cause is now before us for consideration.

OPINION.

Appellant challenges the correctness of the conclusions of law announced by the court upon its finding of facts.

This is the only proposition presented for consideration by the learned counsel for appellant.

The contention of appellant that the court's conclusions of law are erroneous is directed solely to the announcement that the land levied upon and sold by the sheriff was not subject to such levy and sale for the reason that it constituted the homestead of defendants and was, therefore, exempt from such levy and sale.

That defendants in this cause were occupying the land in dispute as a homestead at the time of the levy and sale under the execution, and had been so occupy-

ing same for nearly two years prior thereto, is conceded by the record before us.

This proposition is simply narrowed down to this question: On the one hand, the appellant contends that even though it be conceded that defendants acquired title to the land by devise in 1885, there was no actual occupancy of it, as a homestead, until the latter part of 1898, which was a long time subsequent to the accruing of the debt upon which the judgment was rendered. In other words, appellant insists that in order to maintain defendants' claims to a homestead in the premises involved, it must appear that at the time of the creation of the debt, which was in 1893, Mrs. Stewart was not only invested with the title to the land, but was in the actual occupancy of it as a homestead. On the other hand, respondents contend that, if Mrs. Stewart acquired title to the premises in 1885 by devise, which was prior to the contracting of the debt to Mrs. Sharp, the actual occupancy of the land as a homestead at the time of the levy and sale is all that was necessary to constitute a valid claim of her homestead rights. In other words, respondents' contention is that the *status* of defendant, Mrs. Stewart, in respect to this property at the time she made her claim to the homestead, must determine her right to make the claim.

It is conceded that the right of homestead may exist in a life estate, hence we will direct our attention solely to the proposition as herein stated.

The title to the land in dispute was in Mrs. Stewart, wife of her codefendant, Anthony W. Stewart, and the record discloses that her husband has made no claim of exemption or homestead rights for the protection of his property; hence it follows that, if this land was in fact a homestead, the wife was authorized to make such claim of exemption, for herself and children. [Sec. 4335, R. S. 1899.]

That the title to the estate in dispute was vested in Mrs. Stewart by devise in 1885, there can be no dis-

pute.   The title to the premises by Mrs. Stewart did
not originate from the partition proceeding in 1898.
The estate was vested, and her title established, by the
devise in 1885; the only effect of the partition proceed-
ing was to designate the boundaries in severalty to that
which was her own by virtue of the devise in 1885.
[Snyder v. Elliott, 171 Mo. 362; Propes v. Propes, 171
Mo. 407; Whitsett v. Wamack, 159 Mo. 14; Palmer v.
Alexander, 162 Mo. 127.]

        At the very threshold of this investigation we are
confronted with the fact that we are dealing with the
subject of homestead, one in which all the courts have
manifested a very deep consideration.

        While the courts, in the interpretation of home-
stead exemption statutes, would not be authorized or
warranted in extending the terms beyond the spirit and
intention of their provisions, yet, in view of the ben-
evolent purposes sought to be accomplished by them,
it has been nearly the universal ruling of the courts
that such statutes should be liberally construed.

        The vital question in this cause is the *time* of oc-
cupancy of the premises claimed as a homestead.

        That there must be substantial visible occupancy
of the premises at the time of the levy, there is little
or no dispute, but further investigation upon this sub-
ject leads us to the conclusion that the State courts
are not in harmony upon the rules announced in re-
spect to the time of the commencement of such occu-
pancy.   In 15 Am. and Eng. Ency. of Law (2 Ed.), 581,
the situation is truly presented.   It is there said in
the text:   "The rule varies in the different States as
to the time at which occupancy of premises must com-
mence in order that they may be exempt as against a
particular debt.   In some States premises need not be
occupied as a homestead at the time when a debt is
contracted, but it is sufficient if they are occupied be-

fore it is sought to subject them to liability for the debt and before they are claimed as a homestead."

This court has spoken upon this subject in no doubtful or uncertain terms. In Finnegan v. Prindeville, 83 Mo. 517, there was a claim by the defendant of exemption of his homestead, and to fully appreciate the full scope of the ruling of this court upon the question in that case, we here reproduce substantially the state of facts, upon which the rule was announced. The following was the admitted evidence in that cause:

"It is admitted by the parties to this suit that the deeds to the defendant for the land set apart as a homestead by the sheriff was filed in the recorder's office of Lewis county, Missouri, in the year A. D. 1866. That the defendant, at the time of filing said deeds aforesaid, was a resident of the State of Ohio, and continued so to be until the year A. D. 1871. That the debt upon which the judgment in this cause was rendered, and upon which said execution was issued, is stated and alleged in the petition upon which said judgment was rendered, to have been contracted and created in June, A. D. 1869, and whilst the defendant, Prindeville, was still a citizen of, and with his family residing in, the State of Ohio. That the defendant with his family moved from the State of Ohio to the State of Missouri, in the spring of the year A. D. 1871, and in that spring settled on the lands in controversy with his family, and he and his family have resided thereon ever since."

HENRY, J., speaking for this court, held that the defendant was entitled to claim the premises as exempt, and in announcing the conclusion upon that subject made manifest the position of this court upon that subject. It was said:

"The policy of the law is to secure housekeepers and heads of families homes which can not be taken from them for debts contracted after the acquisition of the homestead. The acquisition of the land must be

followed by its occupancy as a homestead by the claimant, and this occupancy, whenever it occurs, relates back to the time when the deed was filed for record. [West River Bank v. Gale, 42 Vt. 29; Lamb v. Mason, 45 Vt. 500.]"

Emphasizing the rule as above quoted, the learned and esteemed judge during the course of his opinion further states that, "The head of a family may have a tract of land in every county in the State, and intended each for his homestead when he purchased it, but he can only have a homestead in that which he occupies as such. The right to a homestead in this State does not depend upon the residence of the claimant and his creditor, or either of them, when the land was acquired. A citizen of another State, when he becomes a citizen of this State, is as much entitled to a homestead as if he had been born in the State, and had never resided elsewhere. The law, by its terms, pays no regard to the residence of the claimant when he acquired his land. It simply regards the status of the party when the homestead right is claimed."

The record in this case discloses that the defendant, Mrs. Stewart, was invested with the title to this land by devise in 1885, long prior to the contracting of her debt. That shortly after the partition proceeding, which resulted in fixing the boundaries of the land, to which she was entitled by the devise of 1885, she and her minor children moved upon this land, upon which there was a house, and occupied it as a home for nearly two years before the levy of this execution was made.

The sheriff making the levy and sale was fully notified of her rights in the premises before the sale, but refused to take any action in respect to the preservation of her homestead exemption.

There is nothing indicated in the record that the defendants or either of them were claiming any other homestead, hence we have reached the conclusion that Mrs. Stewart had the right to claim the land in dis-

pute as exempt from levy and sale under the execution issued in this cause.

Having acquired the property prior to the date of contracting the debt, the visible and actual occupancy of the premises at the time of the levy established her right to the homestead exemption.

As was said in the Prindeville case, supra, "The law, by its terms, pays no regard to the residence of the claimant when he acquired his land. It simply regards the status of the party when the homestead right is claimed."

We have examined and fully considered all the cases cited by learned counsel for appellant in support of the contention that this was not homestead property, and it is sufficient to say that none of them, in any way whatever, conflicts with the conclusions reached in the Finnegan-Prindeville case. The correctness of the rule as announced in that case is not challenged by any of the subsequent adjudications upon this subject by this court. In fact, it is cited as authority in support of the rulings in one or two of the cases to which our attention was directed by appellant.

Conceding that the administrator was authorized to assign the judgment in favor of Mrs. Sharp to Richards, about which we express no opinion, the action of the trial court, in sustaining the motion to set aside the sale made by the sheriff under the execution in this cause, was proper, and its judgment should be affirmed, and it is so ordered. *Gantt, P. J.,* concurs, *Burgess, J.,* absent.