## KIMBER BARTON, Appellant, v. WALKER.

### Division One, November 19, 1901.

1. **Homestead:** OCCUPANCY NECESSARY: TIME OF BEGINNING: RECORD OF DEED. The essential feature of a homestead is occupancy. Without occupancy there can be no homestead. Therefore, the homestead of the owner of land does not date from the time he filed his title papers for record if he was not then occupying the same as a homestead, but from the time he began to occupy the same after he filed his deed for record. And in such case the land is subject to sale for debts contracted by him between the time of filing his deed for record and the time he actually moved upon or occupied the land.

2. ——: ——: DEED: STATUTES. The language of the statute which says that "the time of acquiring" the homestead shall be the date of filing for record "the deed of such homestead," means a deed to a homestead, and there can be no homestead without occupancy as such.

3. **Actions:** LAND DEEDED TO WIFE: NECESSARY PARTY. Where a husband deeds land to his wife and moves thereon, she is a necessary defendant to a suit to subject it to the payment of his debts.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*White & McCammon* for appellant.

(1) The head of a family can have only one homestead exempt at a time, and the homestead owned and used as such at the time the debt accrues is the one exempt. Stanley v. Baker, 75 Mo. 60; Goodall v. Boardman, 53 Vt. 92. In the case at bar, the respondent owned and lived on a homestead in Mt. View, Howell county, at the time the debt was contracted and at the time suit was brought thereon. This homestead was exempt from levy in satisfaction of appellant's debt. Respondent subsequently sold it and moved on to the farm, then for the first time claiming the latter as his homestead. It is not exempt under the above authorities. Our statute being derived from that of Vermont, the construction of the Vermont courts is authoritative. Macke v. Byrd, 131 Mo. 689; Shindler v. Givens, 63 Mo. 394. (2) Actual occupancy is necessary in order to fix upon the premises its character of homestead. Brown v. Lindsey, 95 Mo. 258; Goodall v. Boardman, 53 Vt. 92; Elston v. Robinson, 23 Iowa 208; Finnagan v. Prundville, 83 Mo. 520. (3) At the time respondent first formed the intention of making the farm a homestead and when he attempted to impress it with that character by moving on to it, he had no title to it. The legal title was in Holden, who held it as a sort of trust for respondent. But a homestead can not be claimed in an equitable estate. Griswold v. Johnson, 22 Mo. App. 466; Shindler v. Givens, 63 Mo. 394; Tennant v. Pruitt, 94 Mo. 145; Thompson, Homestead, sec. 300. (4) Defendant disclaims as to one forty and only claims homestead in 160, therefore, plaintiff should have had judgment for that forty in any event.

*A. H. Livingston* for respondent.

VALLIANT, J.—Ejectment for land in Texas county. Plaintiff claims under sheriff's deed conveying the land sold under execution on judgment in favor of Barton Brothers against defendant. Defendant claims that the land was his homestead and exempt for execution.

The facts are as follows: The debt on which the judgment was founded was contracted in 1894. At that time defendant resided with his family in Mountain View, Howell county, in a dwelling owned by himself, and was engaged there in mercantile business. At the same time he owned the farm in suit in Texas county and a farm in Howell county. His deeds to the Texas county lands were obtained and recorded in 1890 and 1891. In the spring of 1895 he fell into financial trouble, his property was attached, and his health gave way. On March 20, 1895, he conveyed the Texas county land, by deed of that date, to one Holden, a friend, without any real consideration and for the purpose of having Holden convey it to his (defendant's) wife. That deed was recorded April 18, 1895. Holden held the title until September 13, 1895, when he reconveyed 160 acres of the land to defendant and the rest to defendant's wife. In April, 1895, defendant resolved to move with his family to the Texas county farm and make it his home. He began to move in April but, some affliction in his family occurring, his moving was not complete until the eighth or tenth of May, 1895, since which date he has resided on the farm claiming the 160 acres as his homestead. The suit in which judgment was rendered was commenced by attachment in the circuit court of Howell county, March 25, 1895, founded on a note dated March 8, 1895; the attachment was placed on the Texas county farm May 20, 1895, and the final judgment confirmed the attachment. The judgment was rendered April 28, 1897, execution issued May 5, and the land sold thereunder July 6, 1897, and bought by plaintiff who holds the sheriff's deed. It was agreed at the trial that the value of the 160 acres was less than $1,500 and the rents and profits of the premises was $5 a month. The court rendered judgment for defendant and the plaintiff appeals.

The only question presented on this appeal is, was the

defendant entitled, as against the debt in judgment, to hold the property as a homestead exempt from execution.

Our statute (sec. 5441, R. S. 1889, same sec. 3622, R. S. 1899) expressly renders the homestead subject to attachment and execution upon causes of action existing at the time of the acquiring such homestead except as therein otherwise provided, "and for this purpose such time shall be the date of the filing in the proper office for the records of deeds, the deed of such homestead," etc.

It is not disputed that the defendant acquired a homestead in the 160 acres, but it is denied that he acquired it before the cause of action existed on which the judgment in this instance was founded. The evidence shows that the debt accrued in the summer of 1894, but it took the form of a note dated March 8, 1895. It is immaterial for the crucial point in this case which of those dates be taken: March 8, 1895, will serve the plaintiff's claim as well as the earlier date. If, in the sense of the statute quoted, the date of filing his title deeds for record by the defendant is to be taken as the date of his acquiring the homestead right, then that date, which was 1890 or 1891, was long prior to the debt on which the judgment was founded. And on the other hand, if the date of acquiring the homestead right was the date of his beginning to occupy the land as a homestead, which was in April, 1895, or, if it was to date from the time Holden reconveyed the land to him, which was September 13, 1895, then it was after the debt accrued. The date of filing the Holden deeds for record does not seem to be given in the abstract before us, but that does not impair the defendant's claim here, because the deeds if recorded at all must have been after their date, September 13, 1895.

Before the defendant gave up his residence in the town of Mountain View and before he began to move to the land in question with a view of making it his place of residence, that is, on March 20, 1895, he conveyed the title to the land

by deed of that date to Holden; therefore, from April, 1895, when his occupancy of the land as a homestead began, to September 13 of the same year, when Holden deeded it back to him, his relation to the property was that of the owner of the equitable estate, occupying it as a homestead, with the title lodged in another person.   That, at least, is the most favorable view that can be taken of the case for the defendant, for, as the land was conveyed to Holden to be conveyed by him to defendant's wife, there might arise a question if, while Holden held the legal title under those conditions, defendant owned the equitable estate; but as above said, we will assume for the purpose of this case that he did.

A distinguished text-writer on this subject has said that a homestead right may be had in an equitable estate. [Thompson on Homesteads, sec. 170.]   And we see no reason to question that proposition.   We have held that a homestead may exist in an equity of redemption.   [State ex rel. v. Mason, 88 Mo. 222; Meyer v. Nickerson, 101 Mo. 184.]

The same learned text-writer comments on the clause of our statute now under discussion, and pronounces it unwise, leading to unjust results.   In that connection he says:   "On the other hand, suppose a person buys land, records the deed of purchase, and does not occupy the land for several years, during which time he contracts debts—can he, by occupying the premises as a homestead, before attachment or judgment, hold the creditors at arms length?"   The hypothetical case there propounded is the very case we have now for decision.   The author answers his question thus:   "Unless the courts graft exceptions upon the statute he can; for it affords no room for construction."

We are not favored with a brief in this case on the part of respondent and therefore we do not know what his position was in the trial court, nor on what point the case there turned, but we presume it was the point above mentioned.

The criticism of our statute by the learned author above referred to would be just if the statute should be so interpreted as to lead to the results suggested. But we do not think that is what it means. The statute treats not of the abstract subject of acquiring title to land but of acquiring a homestead. A homestead is not acquired by a deed alone or by mere descent of title. A deed or descent of title may be essential in the acquisition of a homestead, but property deeded or descended is not a homestead until it is occupied as a family home. The clause under discussion could not have been intended by its author to eliminate from the statute creating a homestead the essential feature of occupancy as a home. Even if the words indicative of occupation as a home were absent, we would be compelled to construe them as being implied or else interpret the statute as contradictory of its general purpose. The language used is that "the time of the acquiring such homestead........shall be the date of the filing in the proper office for the record of deeds, the deed of such homestead," etc. In order that the homestead rights should date from the filing of the deed for record it is essential, in the language of the statute itself, that it be a deed to a homestead, and it could not be a homestead without occupancy as such. The language assumes that the initial step has been taken, the essential fact accomplished, the premises occupied as a home. The clause was designed to prevent such a construction of the homestead statute as would give the one the benefit of the exemption before he filed his deed for record. The homestead law was conceived for the relief of the honest unfortunate debtor and this clause was inserted to guard as far as possible from its abuse for a dishonest purpose. The statute means that the homestead is not acquired until the deed is filed for record, but it does not mean that it may be acquired before the land is occupied as a home. See how the statute, if this were not its meaning, would contradict itself when applied to the facts of this case. The deeds to this land

were filed for record in 1890 and 1891. The defendant was then residing in the town of Mountain View, in Howell county; he had a homestead in that town and continued to reside there with his family until April, 1895. If we date the acquisition of his homestead in the Texas county farm from the day of filing his deeds for record, we should be compelled to say that up to April, 1895, he had two homesteads at the same time, one in Texas county which he had never occupied or intended to occupy as such, and one in Mountain View. Of course, a man can not have two homesteads at the same time. [Stanley v. Baker, 75 Mo. 60.]

Nothing here said is in conflict with the previous rulings of this court. Language is used in some of our former decisions to the effect that the date of filing the deed is the date at which the homestead right is to be regarded as having been acquired, but in those cases the judgment debtor had been in occupancy of the land as a homestead before he filed his deed for record and was seeking to carry his exemption back to the beginning of his occupancy, but the judgment was that he could not go back of the date of filing his deed for record. [Shindler v. Givens, 63 Mo. 394; Tennant v. Pruitt, 94 Mo. 145; Payne v. Fraley, 165 Mo. 191.]

The vital facts in the case are these: the debt on which the judgment was rendered, for the satisfaction of which the sheriff's sale was made, was contracted in the summer of 1894; at that time, and until April, 1895, the defendant resided in the town of Mountain View, had a home and a homestead there; he owned the land in question in this suit and his title deeds thereto had been on record since 1891, but he had never lived on it; in April, 1895, he moved on this land and made it his home. Under these facts we hold that he did not acquire a homestead in the land until April, 1895, and therefore, it was not exempt from the execution in question.

The plaintiff should have had a judgment for the 160 acres contained in the deed from Holden to defendant, dated

September 13, 1895, but was not entitled to a judgment for the possession of the 40 acres deeded by Holden to the defendant's wife. She is not a party to this suit and her rights, if she has any to any of the land in question, are not affected by the judgment or by any facts that the evidence in this case tends to prove or by any facts that the parties to the record may have agreed to.

The judgment is reversed and the cause remanded to the circuit court of Texas county to be retried according to the law as herein laid down. All concur.