ROUSE v. CATON et al., Plaintiffs In Error.

Division One, March 29, 1902,

1. **Fraudulent Deed:** HOMESTEAD. A suit to set aside a voluntary deed made to hinder and delay creditors is not to fail because a part of the land conveyed thereby was a homestead of the debtor at the time the deed was made but not his homestead at the time the debt was contracted to defeat the payment of which the voluntary conveyance was made. It requires both ownership and occupancy to constitute a homestead.

2. ———: ———: TWO HOMESTEADS: DEED TO WIFE. No head of a family can have two homesteads at the same time, nor can husband and wife, while living together, each have a separate homestead at the same time. So if the owner of a farm rents it out, and buys and moves into a house in town, which, although deeded to his wife, he declares at the time he purchased it was to be his homestead, he loses his homestead in the farm.

3. ————: VOLUNTARY UNRECORDED DEED: SUBSEQUENT INSOLVENCY: JUDGMENT: EXECUTION: PURCHASE BY CREDITORS: TITLE. On the faith that certain lands belonged to C., as the records indicated, R. loaned him money, and afterwards sued him in attachment and obtained judgment for the amount of his debt and had execution issued thereon, and at the sale purchased the land and had the amount of his bid credited on the judgment, and then brought this suit to have set aside a voluntary deed made after the debt was contracted but before the attachment was levied in the former suit, and for possession. At the trial of this cause it came out that C. had years previously, at a time when he was perfectly solvent and before R.'s debt was incurred, made another deed, without consideration, to a third party, who in turn conveyed the land to C.'s wife and children. The deeds evidencing the last transaction were not recorded, and remained at all times under the control and in the possession of C. and his wife. *Held*, that R.'s title acquired at the sheriff's sale is not to bear the infirmity of being preceded by such deeds, and he is not to be charged with notice that the unrecorded deeds had been made, since the purpose of these deeds was to defeat the grantor's indebtedness to R., which grantor was enabled to incur on the faith of his ownership of the lands, but the deeds as to R. must be held to be fraudulent and void, and R. is entitled to judgment for possession.

Error to Linn Circuit Court.—*Hon. Jno. P. Butler,* Judge.

AFFIRMED.

*Lander & Lander* for plaintiffs in error.

(1) The homestead exemption to the extent of the statutory limit is to all intents and purposes forbidden ground, upon which the attaching or execution creditor can not enter as against the homesteader or his vendee. Grimes v. Portman, 99 Mo. 229; Macke v. Byrd, 131 Mo. 682; Stewart v. Stewart, 65 Mo. App. 663. (2) The homesteader may mortgage, pledge, sell, give away, or fraudulently convey his homestead, and creditors may stand around and say: "How is this?" The law answers: "Hands off; you have no con-

cern with it. No judgment lien attaches to it." Grimes v. Portman, supra; State ex rel. v. Dively, 66 Mo. 376; Beckman v. Myer, 75 Mo. 333; Riche v. Westenhoff, 85 Mo. 642; Greer v. Major, 114 Mo. 155; Holland v. Kreider, 86 Mo. 59; Kendall v. Powers, 96 Mo. 142; Bank v. Guthrey, 127 Mo. 189. (3) When the homesteader or his vendee is in the actual, visible possession of the homestead property, such possession is a sufficient assertion of all homestead rights. Peake v. Cameron, 102 Mo. 574. (4) Where the homestead property exceeds the statutory limit, it is the duty of the officer holding execution to set off the homestead and proceed with his execution on the excess. The homestead is not forfeited even though the owner fails to claim it at time of levy of execution, or the officer holding execution fails to set off or assign homestead. Vogler v. Montgomery, 54 Mo. 583; Peake v. Cameron, supra. In Macke v. Byrd, 131 Mo. 682, it is clearly and distinctly settled that where the homestead property exceeds the statutory limit, the excess must be defined and set apart before it can be subjected to sale on execution, overruling all former cases holding that the sale could be made subject to the homestead; and further, that no judgment lien attaches to the homestead property as against the homesteader or his vendee until such assignment is made. Ratliff v. Graves, 132 Mo. 76; Vogler v. Montgomery, supra; Creech v. Childers, 156 Mo. 338; Stewart v. Stewart, supra. (5) Rouse, the execution creditor, who bid in the 280 acres (on which the homestead was located) for $2,000, obtained his sheriff's deed, and applied his bid of $2,000 as a credit on his own execution and judgment, is not a bona fide or innocent purchaser, but takes his title subject to all infirmities. He stands just where he did before; if he gets nothing, he loses nothing. The rule *caveat emptor* applies in full force. The unrecorded deeds conveying the 280 acres (including homestead) by L. T. Caton and wife to Whitaker, and Whitaker to Fannie, Leo and Harry Caton, in 1890, when

L. T. Caton was entirely solvent, stand good and valid as against creditor Rouse. Herman on Executions, sec. 328; Freeman on Executions, sec. 300; Carnahan v. Yerkes, 87 Ind. 62; Swayze v. Burke, 12 Peters, 24; Still v. Swackhamer, 103 Pa. St. 7; Orme v. Roberts, 33 Tex. 768; Baze v. Asper, 6 Minn. 226; Stephens v. Dennison, 1 Or. 19; Winston v. Otley, 25 Miss. 451. A bona fide purchaser must purchase upon some new consideration. Webster v. Van Steenbergh, 46 Barb. 211; Alden v. Trabee, 44 Conn. 455; Spicer v. Waters, 65 Barb. 227; Knibell v. Hutchins, 3 Conn. 450; Jackson v. Cadwell, 1 Cowen 622; Root v. French, 13 Wend. 570; Wood v. Robinson, 22 N. Y. 564. A good consideration is not sufficient (Weaver v. Borden, 49 N. Y. 286), neither is a past consideration (Cary v. White, 52 N. Y. 138). In this case, under the pleadings, issues and evidence, two distinct issues were presented—one for the chancellor and one for the jury; they stood for separate trials and separate judgments. Henderson v. Dickey, 50 Mo. 161; Crow, Adm'r, v. Peters, 63 Mo. 435; Peyton v. Rose, 41 Mo. App. 262; Bobb v. Woodward, 42 Mo. 482. Had the deed from Caton and wife to Leo and Harry Caton, of date August 26, 1895, under the issues and evidence, been the only matter before the trial court, the chancellor could have set aside that deed, and then rendered judgment on the ejectment count for plaintiff. Morrison v. Herrington, 120 Mo. 665; Dougherty v. Harsel, 91 Mo. 161.

*A. W. Mullins* for defendant in error.

(1) The deed of conveyance from L. T. Caton and Fannie Caton, his wife, to their sons, Leo and Harry Caton, dated August 26, 1895, acknowledged September 5, 1895, and recorded July 20, 1896, was voluntary, a mere gift, and without a valuable consideration; and if the said L. T. Caton was not already insolvent, before said conveyance was made,

the effect thereof was to make him absolutely insolvent. The conveyance was therefore fraudulent and void as to the plaintiff, Rouse, and all other creditors of said L. T. Caton whose debts existed at that time. Bump on Fraudulent Conveyances (4 Ed.), secs. 252, 253, 254; Lionberger v. Baker, 88 Mo. 447; Grocery Co. v. Monroe, 142 Mo. 165; Bohannan v. Combs, 79 Mo. 312; Snyder v. Free, 114 Mo. 360. The interest of an execution debtor in land which he has conveyed in fraud of creditors is salable under execution. Ryland v. Callison, 54 Mo. 513; Lionberger v. Baker, supra; Rinehart v. Long, 95 Mo. 401; Garrett v. Wagner, 125 Mo. 450; Shanklin v. McCracken, 151 Mo. 587. And the purchaser on proof of the fraud is entitled to a decree vesting the title in him. Kinealy v. Macklin, 2 Mo. App. 241; Lionberger v. Baker, supra; Jacobs v. Smith, 89 Mo. 673; Slattery v. Jones, 96 Mo. 216; Garret v. Wagner, supra. (2) The evidence shows that plaintiff, Rouse, bought the property at the sheriff's sale made to satisfy his (the plaintiff's) judgment, and that he paid his bid as recited in the sheriff's deed. After paying the sheriff enough out of his bid to pay the costs and sheriff's commission in making the sale, it is wholly immaterial whether the plaintiff purchaser paid the sheriff the balance of the bid in cash and then received back from the sheriff the money so paid, or simply gave his receipt to the sheriff for such balance. In either case he was a bona fide purchaser for value, and as such protected under the statute. Freeman on Executions, sec. 300; Bump on Fraudulent Conveyances, (4 Ed.), 164; Garrett v. Wagner, supra; Shanklin v. McCracken, supra; Seymour v. Wilson, 19 N. Y. 421; Gleason v. Day, 11 Wis. 498; Gover v. Doheney, 33 Iowa 36. (3) The deed from L. T. Caton and his wife to John C. Whitaker, and the deed from Whitaker and wife to the wife and two sons of said L. T. Caton, offered in evidence, not having been recorded and no notice having been given of them, and plaintiff, Rouse, having no knowledge whatever of them until

the trial in this case in the circuit court, said deeds are, as to the plaintiff, of no force or effect, but utterly invalid and void. Secs. 2418, 2420, R. S. 1899; Bank v. Rohrer, 138 Mo. 369; Bank v. Frame, 112 Mo. 502; Bank v. Doran, 109 Mo. 40; Payne v. Lott, 90 Mo. 676; Goldsby v. Johnson, 82 Mo. 602. (4) The Patterson property in the town of Bucklin, purchased and paid for by defendant L. T. Caton, and conveyed by Mrs. Paterson to Mrs. Caton, wife of said L. T. Caton, by deed dated August 3, 1891, and recorded December 18, 1893, was and is the homestead of said L. T. Caton and his family, although the legal title thereto stands in his wife. He and his wife are entitled to but one homestead. Thompson on Homesteads and Exemptions, secs. 220, 225; Kendall v. Powers, 96 Mo. 142; Hart v. Leete, 104 Mo. 337; Peake v. Cameron, 102 Mo. 568; Dreutzer v. Bell, 11 Wis. 114; Richter v. Bohnsack, 144 Mo. 516.

BRACE, P. J.—The defendants in this case are Luke T. Caton and his two sons, Leo T. Caton and Harry L. Caton.

By deed dated August 26, 1895, acknowledged September 5, 1895, and recorded on July 20, 1896, the said Luke T. Caton and wife conveyed to the said Leo T. Caton and Harry L. Caton the east half of the southeast quarter and the southwest quarter of the southeast quarter of section 16, and the northeast quarter of section 21, in township 58, range 18, in Linn county, containing 280 acres.

On July 23, 1896, the plaintiff, J. W. Rouse, instituted a suit by attachment in the circuit court of said county against the said defendant, Luke T. Caton, which was duly levied on said lands, and which was thereafter duly sustained, and therein on April 26, 1897, the plaintiff obtained judgment against the said Luke T. Caton in the sum of $4,600.57 and costs. In pursuance of an execution issued on this judgment, the said real estate was duly sold, and the plaintiff became the

purchaser thereof for the sum of $2,000, received a sheriff's deed therefor, and thereafter instituted this suit.

The petition is in two counts. The first in the nature of a bill in equity to set aside said deed of Luke T. Caton of date August 26, 1895, on the ground that it was made without consideration, and for the purpose of hindering, delaying and defrauding his creditors, and the second, in ejectment, to recover possession of the premises. The finding on both counts was in favor of the plaintiff, and defendants' motion for rehearing and a new trial having been overruled, they bring the case here by writ of error.

The facts of this case, so far as they can be made out from the imperfect transcript of plaintiff in error, which contains but a fragment of the evidence, eked out by that of the defendants in error, seem to be about as follows:

In 1890 Luke T. Caton was the owner of the 280 acres of land in controversy, which, in connection with another 40-acre tract, the title to which was in his wife, constituted his home place, on which he resided with his family. He owned other lands and a one-half interest in a saloon in the town of Bucklin, some two or three miles distant from his home farm, and some personal property. He was then in comfortable circumstances and entirely solvent. In the fall of that year he and his wife signed and acknowledged a deed conveying the home farm to one John C. Whittaker, and a few days thereafter the said Whittaker signed and acknowledged a deed conveying said premises to Fannie Caton, the wife of the said Luke T. Caton, and his two sons Leo. T. Caton and Harry L. Caton. These deeds were never recorded, and remained in the possession or under the control of said Luke T. and his wife from the time they were so signed until they were produced on the trial of this cause. At the time these deeds were so signed and acknowledged, his son Leo was aged about twenty years, and his son Harry was about nine years old. It is conceded that these deeds were

without valuable consideration.  As counsel for defendants say in their brief, "This roundabout transaction was only to avoid a direct conveyance to the wife."

Afterwards the deed in controversy, conveying the 280 acres aforesaid, to the said Leo. T. and Harry L. Caton, was signed by the said Luke T. Caton and wife and acknowledged on the fifth day of September, 1895.  This deed was also without any valuable consideration, and remained in the possession and under the control of the said Luke T. and his wife until it was filed for record on the twentieth of July, 1896. Up to the time of the filing of this deed for record, Luke T. Caton always claimed and treated this land as his own, gave it in to the assessor, paid the taxes on it and incumbered it by mortgage and was considered by everyone dealing with him as its owner, and neither Leo T. or Harry L. ever made any claim or ownership to it.

In the spring of 1891, Luke T. Caton with his family, except his son Leo, moved from his home farm to the town of Bucklin, distant two or three miles therefrom, where he and his family continued thereafter to reside until about the middle of May, 1897, when they moved back to the home farm.  In the meantime, Leo was left in charge of the farm, its stock and equipment, with the understanding between him and his father that he should run the place, and if anything was made in operating it he should have the profits.  On removing to Bucklin, Luke T. Caton purchased an interest in a flouring mill in operation there, and other property, and after renting for a short time, purchased a dwelling house and lot on the third of August, 1891, into which he then moved, with his family, and where thereafter they continued to reside until about the middle of May, 1897, when he returned to the farm.  The purchase money for this homestead was paid by Luke T. Caton, but the deed was taken in the name of his wife and duly recorded December 16, 1893.  Thus the said Luke T. Caton continued living with his family in this home-

stead in Bucklin, carrying on his farming, milling and saloon business from the spring of 1891 until the fall of 1895, during which time he incurred an indebtedness in excess of the value of all his property, and became insolvent. It was under these circumstances that the deed in question was thereafter made. The plaintiff's debt was one of the many incurred by him during this period on the faith of his ownership of this 280 acres of land in question, and other lands, as shown by the records. No error is assigned upon any action of the court in the trial of the case. But a reversal of the decree and judgment is urged on the grounds:

FIRST. That Luke T. Caton had a homestead in this land which was not set off to him before the sale under the execution, hence, under the rulings of this court in Macke v. Byrd, 131 Mo. 682; Ratliff v. Graves, 132 Mo. 76, and Creech v. Childers, 156 Mo. 338, the sale was void. This contention is not tenable. At the time when the indebtedness of Luke T. Caton to the plaintiff was incurred, when he was sued thereon by attachment and the writ levied on the premises, and even when judgment therein was rendered against him, he was living with his family on his homestead in the town of Bucklin. This was none the less his homestead (as he declared he intended it to be at the time he purchased it) because he took the deed thereto in his wife's name. While he continued to own the farm of which the 280 acres sold under execution was a part and in which he formerly had a homestead, he had abandoned it as a homestead in 1891, and as against the rights which had accrued to the plaintiff after that time and before his return to it in 1897, he had no homestead right therein. It requires both ownership and occupancy to constitute a homestead, and no head of a family can have two homesteads at the same time, neither can husband and wife while living together each have a separate homestead at the same time. [Thompson on Homestead and Ex., secs. 225, 245 and 246; Freeman on Executions, sec. 248; 15 Am. and Eng. Ency. of

Law, pp. 566, 575 and 602; St. Louis Brewing Ass'n v. How-ard, 150 Mo. 445; Peake v. Cameron, 102 Mo. 568; Kendall v. Powers, 96 Mo. 142; Bunn v. Lindsay, 95 Mo. 250; Finne-gan v. Prindeville, 83 Mo. 517.]

SECOND. That as the amount of plaintiff's bid·at the sale, less the costs, was credited on the execution, and no new con-sideration passed, the plaintiff was not an innocent purchaser, but took his title subject to all infirmities; that the rule of *caveat emptor* applies, and the unrecorded deeds conveying the 280 acres by Luke T. Caton and wife to Whittaker and from Whittaker to Luke T. Caton's wife, and his sons Leo and Harry Caton in 1890, when Luke T. Caton was entirely solvent, stand good and valid as against the plaintiff. This is an attempt to protect one fraud by another. It is true, that if the deeds of 1890 had been delivered and recorded, when they were signed and acknowledged, they would have vested Luke T. Caton's title in the grantees therein named as against sub-sequent creditors. But, as these deeds were never in good faith delivered for the purpose of vesting title in such grantees, but ever remained either in the possession or under the do-minion and control of Luke T. Caton from the day of their date until they were produced on the trial of this cause, until which time neither plaintiff nor any other of his creditors had any notice of their existence, and were purposely kept off of the records, whereby he was enabled on the faith of his owner-ship of these and other lands, to incur the very indebtedness which he now seeks to defeat by them, they were fraudulent and void as to plaintiff and as to such creditors, passed no title as against the plaintiff, and the court committed no error in vesting the title in the plaintiff, and in awarding him the possession of the premises. The decree and judgment of the circuit court will therefore be affirmed. All concur.