MILLIE J. KENNEDY'S ADMINISTRATOR, Respondent, v. ROBERT C. DUNCAN, Appellant.

St. Louis Court of Appeals. Submitted on Briefs Feb. 8, 1911.
Opinion Filed May 2, 1911.

1. APPELLATE PRACTICE: Conclusiveness of Finding. A finding by the trial court which is sustained by sufficient evidence is conclusive on appeal.

2. FRAUDULENT CONVEYANCES: No Consideration: Rights of Creditors. Creditors of a grantor may, by direct attack, set aside a deed which is fraudulent as to them because without consideration.

3. ———: ———: **Fraudulent in Part: Effect on Remainder.** That a deed conveying a lot and an eighty-acre tract was held fraudulent as against creditors, for want of consideration, as to the eighty-acre tract, did not affect the validity of the conveyance as to the lot.

4. ———: ———: **Rights of Grantors.** A conveyance which is not supported by a consideration is not void, but is voidable on a direct attack by a creditor; but a grantor cannot impeach a conveyance for want of consideration, in the absence of fraud in procuring it, nor have it voided for his own fraud.

5. **HOMESTEADS: Elements of Right.** To constitute a homestead, the homesteader must have title to the property, it being immaterial whether the title is in fee or for life; must intend to claim the property as a homestead; and must occupy the property, although the right to a homestead has been recognized where the homesteader, for a period of time, did not in fact occupy the property, but temporarily resided elsewhere.

6. ———: ———: **Title and Claim of Homestead Necessary: Dower.** In an action by a widow for dower in land conveyed by her deceased husband, in which land she had not released her dower, a defense that she had a homestead which was greater in value than her dower rights, thus defeating dower, under section 6710, Revised Statutes 1909, was not good, where the property in which she was alleged to have a homestead had been jointly used and occupied by her and her husband as a home until his death, and thereafter had been occupied, by her, but had been conveyed by her and her husband to their daughter, which conveyance was voidable, if at all, only by their creditors, and never had been set aside, for the reason that a homestead cannot be imposed upon one who refuses to make the claim, and for the further reason that the widow's husband had no title to said land, without which a homestead could not vest.

7. ———: **Statutory Right.** The right of homestead is purely statutory.

8. ———: **Date of Acquisition.** Under section 6711, Revised Statutes 1909, the right of homestead, as against creditors, attaches only from the date of filing the deed.

9. ———: **Right of Homestead: Imposing Against Will.** The right to a homestead cannot be imposed upon one who refuses to claim such right.

10. **CONVEYANCES: Parol Evidence to Destroy: Evidence: Statute of Frauds.** One who has by deed conveyed an estate in lands cannot, by his declarations or oral testimony, destroy the estate created, since, to permit that to be done, would be to nullify the Statute of Frauds.

11. **FRAUDULENT CONVEYANCES: Setting Aside: Necessity of Proceeding Against Grantee.** In order to declare void a deed made, without consideration, by a father and mother to a daughter, the latter must not only have been a party to a suit attacking her title, but such title must also have been divested out of her by a judgment.

12. **HOMESTEAD: Abandonment: Intent.** The question of abandonment of a homestead is a matter of intent.
    NORTONI and CAULFIELD, JJ., concurring in result.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*Charles Martin* for appellants.

(1) The property used and occupied by the plaintiff in the town of Olney was her homestead. She and her husband had lived there for eighteen years and had no other home. She continued to live there and use it as her home after her husband's death. Peake v. Cameron, 102 Mo. 568; Thompson, Homestead, sec. 411. (2) The deed made to their daughter in March, 1899, was made to defraud their creditors, and notwithstanding that deed plaintiff still had a life estate in the Olney property. Sharp v. Stewart, 185 Mo. 518. (3) Plaintiff is not entitled to dower in the farm land if her homestead in Olney equals or exceeds one-third in value of both. Revised Statutes 1899, sec. 3621. (4) If the homestead does not equal one-third in value of both pieces of property, then her dower in the farm land must be diminished by the value of the homestead. Graves v. Cochran, 68 Mo. 74; Bryan v. Rhodes, 96 Mo. 485.

*Wm. A. Dudley* for respondent.

(1) Mere occupancy of land as a home does not establish a right to homestead. No deed, descent or devise of the lot 49 to either plaintiff or her husband was shown. R. S. 1899, secs. 3616 and 3622; Tennett v. Pruitt, 94 Mo. 145; Kimbler v. Walker, 165 Mo. 25;

Stinson v. Call, 163 Mo. 323. (2) Creditors are not concerned in the homestead of debtors. Peche v. Cameron, 102 Mo. 568; Grimes v. Portman, 99 Mo. 229; Starn v. Smith, 183 Mo. 464; Welch v. Mann, 193 Mo. 304. (3) The conveyance of Lot 49 being absolute no mere indulgence or verbal permission to occupy would create a life estate in Mrs. Kennedy. She was subject to ejectment at any time. Hall v. Small, 178 Mo. 629 and cases cited.

REYNOLDS, P. J.—By her petition filed in the circuit court of Lincoln county, Mrs. Millie J. Kennedy, alleged that she was the widow of one Armstrong L. Kennedy, and that during the lifetime of her husband he was seized of an estate of inheritance in 80 acres of land in Lincoln county (describing it, and hereafter referred to as the acre tract or property) and that the land was sold under execution against her husband to one Perkins; that Perkins, The Farmers & Mechanics Bank, and others claiming under judgment or sheriff's sales, conveyed it by warranty deed to one Morris; that Morris by warranty deed, conveyed it to defendant in 1904. Averring that she had never relinquished dower in the land and had made demand for assignment thereof of defendant, which had been refused, plaintiff prays judgment for $100 damages and $10 per month for rents and profits and that her dower interest in the land be estimated and computed at its present worth. Other parties were also joined as defendants but the action was dismissed as to them.

The answer, denying the allegations of the petition, avers that at the time of the sale to Perkins, which was in 1900, and for a long time prior thereto, plaintiff's husband was the owner of three certain lots in the town of Olney in Lincoln county, one known as lot No. 49, on which was situated a dwelling house and other improvements belonging thereto and which then was, and for a long time prior thereto had been, occupied and enjoyed

by plaintiff's husband and by plaintiff as their home; that they continued to use this Olney property as their homestead up to the time of the death of the husband and that since then plaintiff, as his widow, has used and occupied and enjoyed the Olney property as her homestead. It is further averred that this homestead property exceeds one-third in value of both the homestead property and the acre property and being the homestead of plaintiff and exceeding one-third in value of both of said pieces of property, plaintiff was not entitled to dower in the acre property. The only town lot finally in issue was lot 49, the two others not being considered.

A general denial was filed by way of reply.

The trial was before the court, a jury being waived. A deed, of date 1890, conveying the acre property from one McCormick to plaintiff's husband, the sheriff's deed to Perkins, the deeds from Perkins and others to one Morris, and from Morris to defendant Duncan, the latter dated 1904, were in evidence. Plaintiff also introduced in evidence the record copy of a deed from plaintiff and her husband, of date March 1, 1899, conveying to M. J. Downing "and to her bodily heirs and if she shall die leaving no bodily heirs then to her nearest blood kin," the acre property and also this lot No. 49 in the town of Olney, that deed duly filed for record and recorded on October 5, 1899, in the recorder's office of Lincoln county.

There was no dispute as to the present possession of defendant of the 80 acres. The evidence was conflicting as to the value of the acre property as well as of lot 49 and as to the value of the rents and profits of each of them. It is unnecessary to notice this evidence of values; the value arrived at and fixed by the trial court is sustained by sufficient evidence and is accepted by us as conclusive on that.

By way of an attack on the deed from plaintiff and her husband to Mrs. M. J. Downing, who was their daughter, and who, it appears, is dead, leaving a child

surviving her, defendant offered in evidence a judgment
of the circuit court of Pike county, setting aside this
deed so far as it included the 80 acres alone. This judg-
ment was entered in a suit by The Farmers & Mechanics
Bank, a creditor of plaintiff's husband, it being adjudged
that the deed, so far as it purported to convey the 80
acres to Mrs Downing, was without any consideration
and that the conveyance was fraudulent and void as
against the plaintiff in that suit. We understand coun-
sel to agree that this judgment did not include the town
lot. Nor is there any evidence in the case that the town
lot was included in the action. It was admitted that the
determination in that case, that the conveyance was
fraudulent as to the attacking creditor, rested on the
fact that the deed to Mrs. Downing from her father and
mother was without consideration. At this present trial
defendant offered in evidence, in connection with the
judgment in the bank case, depositions which had been
taken and used, as we understand it, in that suit, the
depositions being those of plaintiff and her husband.
It appeared by these depositions that when they were
taken both were living and making their home on this
town lot 49. Plaintiff's husband deposed that when he
had made the deed to his daughter, she was then married,
living about 20 miles from him, and had two children;
that he did not know whether his daughter knew at the
time that the deed to these pieces of property had been
drawn up, but he had told her of them after he had made
and acknowledged them; had filed the deed for record
himself. It had remained in his house and in his pos-
session until he sent it for record and he had not deliv-
ered it to his daughter until after filing it for record.
When he told her he had made it, she said that it was
just what she had been looking for for a good while;
that she had expected it for some time. His daughter
did not pay him anything for the land or the lot. When
he conveyed this property to his daughter he did not have
enough to make her equal with his other children. When

he bought the place he had bought it for her and "it was generally known in town that it was M. J. Downing's place."

These depositions and the judgment of the Pike County Circuit Court when offered were objected to by plaintiff. The court, without at the time passing on the objections, said he would take the evidence subject to the objections. He did not specifically pass on them, but from his judgment in this case he evidently disregarded all this testimony.

There was no dispute of the fact of possession by defendant. The Olney lot did not contain 5 acres.

Plaintiff asked no declarations of law. Defendant asked three, all of which were refused. The first was to the effect that if plaintiff's husband had been in possession of lot 49 for 15 years or more before his death and was a housekeeper or head of a family and resided and lived in a dwelling house on the lot, with his family, up to the time of his death, and that the lot did not exceed $1500 in value or five acres in extent, then the property was the homestead of plaintiff's husband and upon his death it passed to plaintiff as her homestead, and if plaintiff has since the death of her husband continued to reside on the premises, then the property is the homestead of plaintiff. The second asked was to the effect that if this lot 49 is the homestead of plaintiff, derived from her husband in the manner above described, in determining what, if any, dower right she has in the farm land, the value of each should be ascertained, etc., stating the law as to this matter as in section 6710, Revised Statutes 1909. The third instruction or declaration asked was in substance that although the court might find that plaintiff and her husband conveyed lot 49 to their daughter in 1899, if the court found from the evidence that the conveyance was fraudulent as to the creditors of the husband and if after making the deed the husband and the family continued to keep the premises as a homestead up to the time of his death and that

since then plaintiff "has continued to occupy and use
said premises as her home, then said property was the
homestead of said A. L. Kennedy, and upon his death
passed to the plaintiff as her homestead, and must be so
regarded for the purpose of this cause notwithstanding
said deed." These declarations of law were refused and
the court rendered a judgment in favor of plaintiff, find-
ing her dower right as existing in the acre property and
assessing its value at $304.60 and her damages at $22.24,
a total of $326.84, which amount the court adjudged to
be a special lien upon and against the acre property
until it is discharged and paid off, ordering special exe-
cution to issue to enforce the lien. Filing a motion for
new trial, which was overruled and exception saved, de-
fendant duly perfected his appeal to the Supreme Court.

The Supreme Court determined that it was not a
case "involving title to real estate," hence, not within
its constitutional jurisdiction. It accordingly trans-
ferred the cause to this court. The opinion of the Su-
preme Court will be found under the title Kennedy v.
Duncan, 224 Mo. 661, 123 S. W. 856. We refer to that
for a more particular recital of the pleadings and is-
sues.

Pending the appeal plaintiff died; her administra-
tor voluntarily entered his appearance and since the
transfer of the case to this court, by written consent of
the parties, the cause has been duly revived in the name
of the administrator of the deceased plaintiff.

The matters of homestead and of rights in home-
steads have been of frequent adjudication by the courts
of our state, and of learned and voluminous discussion
by text-writers. We have been referred by the learned
counsel in this case to many authorities on the points
they raise. We have also examined the matter to some
extent ourselves, independent of these references. There
are many decisions and much learning expended in de-
termining when the right to the homestead attaches, but
in all the cases and by all the textwriters, so far as we

are advised, that question has invariably been adjudicated or discussed on the right of one claiming a homestead to assert that claim; on the endeavor of the claimant of the homestead to have the benefit of the homestead law. In none of them, or in any textbook have we found that claim discussed or adjudicated, where it was sought to force a homestead upon a party against his contention or against his claim of homestead, and even against his own deed. That is what is attempted in this case. It is in evidence here that Kennedy and his wife, by a duly executed, acknowledged, delivered and recorded deed, conveyed this lot 49 to their daughter, the deed, in legal intendment, being a conveyance to her for life and the heirs of her body, and if she should "die leaving no bodily heirs, then to her nearest blood kin." Whether the limitation over is valid need not be considered, for as we gather it, she left a child surviving her, so that it went, on her death, to that child in fee, and so far as the evidence shows, the fee is in that child, its heirs or assigns. At any rate, this deed absolutely and entirely took the property out of the grantors.

Learned counsel for respondent argues that as in the action referred to by the bank this deed was held to have been void for want of consideration, that it failed as a deed to the town lot, although admittedly the judgment only bore on the acre property. We cannot concede this. It is true that on an attack by creditors, if the deed was without consideration and was attacked directly, it might have been set aside, but that was not done as to this lot 49. The fact that lot 49 was also in the deed, which purported to convey the acre tract, and that the deed was attacked only in so far as concerned the acre tract and declared void as to that tract for lack of consideration and hence fraudulent as against the attacking creditor, by no possible argument or on no possible principle, could be held to settle the title of those claiming under that deed to this lot 49. Lot 49 was not involved in that litigation. It might be that there was

a consideration for it and none for the 80 acres. Even admit that there was no consideration for lot 49, that would not render the deed a void instrument, but only voidable, and that could only be adjudicated on a direct attack by a proper party as to that lot. Even a voluntary conveyance is not a void one. It can, moreover, be attacked only by creditors. [Clark v. Thias, 173 Mo. 628, 73 S. W. 616.] The grantor cannot impeach it for want of consideration alone—no fraud as to him in procuring it present. Nor can he have it set aside because of his own fraud. Hence plaintiff's intestate and her husband were in no position whatever to attack the deed to their daughter even on the ground that they had made it fraudulently as to their creditors or that it was a voluntary conveyance so far as they were concerned. But that is what defendant now seeks, in effect, to do for them. He is not a creditor, has no interest in the lot, nothing whatever to do with the transaction between the decedent, her husband and the daughter and is not concerned in it. He seeks to vest plaintiff with a title which she not only does not have, but cannot acquire by any act of her own, short of fraud on her, looking to the cancellation of her own deed.

At the very foundation of the right to a homestead claim, lies title. There are three elements absolutely essential to the existence of the right of homestead. The first is title; the second, intent to claim as a homestead; the third, occupation, although as to this latter, there are cases where the claim to a homestead has been recognized, when the right to it has been acquired, although during a period of time the party claiming it as his homestead, there has been no occupation in fact, the homesteader temporarily residing elsewhere. [See for illustration of this Bealey v. Blake, 153 Mo. 657, l. c. 674, 55 S. W. 288.] In this latter case, as in many others, it is held that abandonment is a matter of intent. [See Barton v. Walker, 165 Mo. 25, 65 S. W. 293, and other

cases cited below.]   No matter what the intent or the occupancy may be, however; title in the claimant is absolutely essential to sustain the claim of a homestead. [Farra v. Quigly, 57 Mo. 284; Shindler v. Givens, 63 Mo. 394; Tennent v. Pruitt, 94 Mo. 145, 7 S. W. 23.]   It is immaterial whether title is in fee or for life; the owner must have title and have a home in the land before he can claim homestead.   [Bemis v. Driscoll, 101 Mass. 421; Sharp v. Stewart, 185 Mo. 518, l. c. 528, 84 S. W. 963.] Our own Supreme Court has repeatedly held that title is absolutely essential.   [Clark v. Thias, supra, l. c. 642 *et seq.;* Sharp v. Stewart, supra.]   The right to homestead is purely of statutory creation.   [State Bank of Eagle Grove v. Dougherty, 167 Mo. 1, l. c. 6, 66 S. W. 932.]   As against creditors the right of homestead only attaches from the date of filing the deed.   [Sec. 6711, Revised Statutes 1909.]   This has been the law of our state from the enactment of the first homestead law in 1865, with the additional change made in 1887, which carried the right to homestead to the property when title arises by devise or descent.   So strictly has this requirement of title and its record been construed, that it is held in Stinson v. Call, 163 Mo. 323, 63 S. W. 729, that the homesteader entering his land as a homestead under the laws of the United States, necessarily residing on it, occupying it as a home, cannot, under our law, claim homestead exemption for the tract so entered and patented to him, as against a creditor who was a creditor prior to the recording of the patent from  the  United States to the homesteader.   Title and occupancy are both essential.   [Barton v. Walker, supra; Rouse v. Caton, 168 Mo. 288, 67 S. W. 578.]   It is true that in many cases, of which Peake v. Cameron, 102 Mo. 568, 15 S. W. 70, is an example, in which latter case Thompson on Homesteads is quoted, it is held that the lot being visibly occupied as a home is a sufficient and the usual assertion of a homestead right therein.   But it is to be observed that in that case the occupant had title, and. is  the  one

who claimed homestead.   While visible occupancy may
be sufficient to establish the right of a party claiming a
homestead, he also having title to the property, it is
very clearly evident from consideration of Peake v. Cam-
eron, as well as of all the cases, that the right to home-
stead is founded not only on title and occupancy, but on
establishment of the intent; that is to say, occupancy
with the intent to claim the homestead. This same intent
is emphasized in St. Louis Brewing Ass'n. v. Howard,
150 Mo. 445, l. c. 451, 51 S. W. 1046.   By the same line
of reasoning the fact of abandonment is a matter of in-
tent.   [Bealey v. Blake, supra; Barton v. Walker,
supra.]   Briefly, and to repeat, there must be title and
occupancy as a homestead, as also the intent to claim
it as a homestead.   As we said in the outset, we are un-
able to adopt any theory by which a right to homestead
can be imposed upon a party who, as in the case at bar,
refuses to claim homestead.   The claim of it as a home-
stead, no less than title and occupancy, fixes the right.
[Finnegan v. Prindville, 83 Mo. 517; Sharp v. Stewart,
supra.]

The evidence that was sought to be introduced by
defendant in this case as to the admissions contained
in the depositions of defendant and her husband, tending
to dispute the deed made to the daughter, was clearly in-
admissible.   They had conveyed by deed an estate in
lands.   They could not by their declarations—their oral
testimony given under oath in the case, or made outside
of the case, destroy by parol, by oral declarations, the
estate created by deed.   The very evil sought to be
avoided by the Statute of Frauds would be revamped
and that statute nullified if that was allowed.   [Hall v.
Small, 178 Mo. 629, l. c. 633, 77 S. W. 733.]

To hold that the deed to the daughter was fraudulent
or void and so divest her and her heirs of title to this
lot 49, she must not only have been a party to some ac-
tion or suit attacking her title, in which the matter of
title to that lot was in issue, but title to that very lot

must have been there diverted out of her by the judgment. Welch v. Mann, 193 Mo. 304, 92 S. W. 98, is a case illustrative of this. This is so plain that it needs no authority for its support. No such judgment in any such case is in evidence here.

In a recent decision by the Kansas City Court of Appeals (Snodgrass v. Copple, 131 Mo. App. 346, 1. c. 351, 111 S. W. 845), Judge JOHNSON, who delivered the opinion, when treating of the matter of homestead, has very forcibly said, that when the question is one of abandonment of a homestead, the key to the solution is the intention of the party. In the case at bar, we have not only no proof of intention in this plaintiff to claim this lot 49 as a homestead, but a positive, unequivocal disclaimer of homestead right in it. As we have seen, plaintiff was in no condition whatever to claim title to lot 49, because, for the purpose of this case, beyond all controversy the title of this lot 49 in this town of Olney is not in her and was not in her husband from the date of the execution, acknowledgment and delivery of the deed to the daughter. Nor could this defendant impose that title on her. Hence it was not possible, under the law, to take its value into consideration in measuring the value of the dower interest of plaintiff below in the 80 acre tract, in which, beyond dispute or doubt, she has her dower.

The declarations of law asked by defendant were properly refused; the first and third are not the law to be here applied; the second, while stating the statute, was unnecessary and inapplicable here.

The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.,* concur in the result.