BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1916.

FIRST NATIONAL BANK OF JOPLIN, Defendant in Error, v. CHARLES WOELZ (Attachment Defendant) H. H. BRALY (Interpleader), Plaintiff in Error.

Springfield Court of Appeals, March 24, 1917.

1. **HOMESTEAD: Abandonment Question of Intent.** The question of intent to abandon the homestead is a question of fact, as is also the question of the abandonment of the homestead.

2. ————: **Homestead: Liable for What Debts.** Homesteads are liable for debts made before the homestead was acquired.

3. **INSTRUCTIONS: Trial Before the Court.** In trials before the court, when no instructions are requested or given, the judgment of the court will be sustained if there is any substantial evidence to support it upon any theory.

4. **FRAUD: Circumstantial Evidence.** Fraud may be proven by circumstantial evidence when in the nature of things it is not susceptible of direct proof.

5. **INSOLVENT DEBTORS: Preference of Relatives.** Where the evidence of the relationship of the parties, the circumstances surrounding them, and the unusual peculiarities of the transaction in question, is of a nature to induce a reasonable mind to believe that fraud was the common object of the parties, an issue of fact is raised to be determined by the trier of the facts.

6. **SECRET AGREEMENT: Fraud.** Secret agreements hold out false colors and false appearances and are calculated to deceive and mis-

197 M. A.]                    (686)

lead creditors and when they have that effect, they are fraudulent as to the creditors deceived.

7. **APPELLATE PRACTICE: Testimony Improperly Admitted.** Where testimony claimed to have been improperly admitted, is not pointed out by plaintiff in error, the appellate court should not be required to search through the testimony of witnesses and weigh every objection that may have been made, in order to find the testimony complained of, and the appellate court will not pass upon such objections unless they are pointed out by the plaintiff in error.

Error to Jasper Circuit Court Division No. 1.—*Hon.* *Jos. D. Perkins,* Judge.

AFFIRMED.

*Walden* and *Andrews* for plaintiff in error.

*C. H. Montgomery* for defendant in error.

"This secret trust, whereby the use and control of one-half the land conveyed was to be exercised by the said Dunning as if he had never conveyed it, is evincive of legal, if not actual fraud on the part of all concerned." Donovan v. Dunning, 69 Mo. l. c. 442. Kahmke v. Weber, 187 Mo. App. 698. "The debtor, being the absolute owner of the property and in no manner obliged to assign, may annex such conditions and qualifications to the transfer as he pleases. If he annex an improper condition the courts must pronounce the assignment itself void; it cannot hold the transfer good and disregard the condition, because that would be to take the property from the debtor against his will. He having consented to part with his title only upon certain conditions the transfer and condition must stand or fall together. If, therefore, the court upholds the assignment it must of necessity protect and enforce the terms and conditions upon which it is made." Bump on Fraudulent Conveyances and Cr. Bills, 2 Ed. p. 404.

If a creditor knows of his debtors' insolvency and takes a conveyance of land from him to himself worth more than enough to pay or secure the debt, and pays cash or gives his notes to the debtor for the excess, the

transaction is fraudulent in law as to the other creditors and the purchaser participates in the fraud. The necessary consequence of taking a conveyance of property whose value exceeds the debt and of paying cash and executing a due bill, to the debtor for the excess, is to delay and hinder the debtor's other creditors to that extent and taints the whole transaction with fraud.

The appellate court is disposed to defer largely to the findings of the circuit court, but nevertheless in a case in equity it will assert its right to review the whole evidence, and draw its own conclusions therefrom. And where the evidence shows that a conveyance by one of the defendants to the other, his brother, was made with intent to delay and defraud his other creditors, and that the brother participated in the fraudulent transaction, the decree of the circuit court dismissing plaintiff's bill, to have the conveyance set aside will be reversed. Bank v. Fry, 216 Mo. 24-25.

FARRINGTON, J.—In 1906 Charles Woelz and his wife bought of one Henly a residence property in Joplin subject to a deed of trust to one Weiler as trustee securing a note for $2,000.

On February 22, 1914, the sheriff of Jasper county (Weiler, the trustee, declining to act) sold the property, and, after paying the debt and costs, there remained in his hands a surplus of $2,092.37.

At the following September term of the circuit court of Jasper county the First National Bank of Joplin, for an indebtedness of its own and as assignee of the Citizens State Bank attached this surplus as the property of Charles Woelz and garnished the sheriff who thereafter answered admitting the money was in his hands.

H. H. Braly filed an interplea claiming this surplus money by virtue of a warranty deed of this property from Woelz and wife to him dated December 9, 1913, and recorded in Jasper county December 22, 1913. This deed, in form, is a warranty deed, there being no defeasance whatever. Braly claimed in his interplea that Woelz and wife made this conveyance to him as secur-

ity for sums of money advanced to Woelz by Peter Janss and Herman Janss of Los Angeles, California, and instructed him (Braly) to dispose of the property for the benefit of said Peter and Herman Janss, and his testimony at the trial is to the same effect.

In answer to the interplea the attachment plaintiff set up that at the time of the execution of the warranty deed from Woelz and wife to interpleader Braly (December 9, 1913) defendant Woelz was indebted to the plaintiff in the sum of $1,800 and interest, and to the Citizens State Bank in the sum of $1,500 and interest, and that said deed to Braly was a voluntary one without consideration and was made for the sole purpose of hindering, delaying and defrauding plaintiff and the Citizens State Bank, creditors of Woelz, and of which purpose said interpleader Braly had full notice and participated therein at and before said deed was made and prayed that the deed be declared fraudulent and void and that the interpleader be adjudged to have no interest in the property or money attached and garnished.

The case was tried before the court on the issue thus made. No declarations of law were asked or given. The sole question was whether interpleader Braly was entitled to the surplus in the sheriff's hands by virtue of his warranty deed from Woelz. The court after hearing evidence which covered a wide range found the issue in favor of the plaintiff and against the interpleader and rendered a judgment that the interpleader take nothing by his interplea, from which this appeal resulted.

As stated, Charles Woelz, the attachment defendant, acquired this property in 1906. It does not appear just when he and his brother, G. Woelz, opened their clothing business in Joplin. Charles Woelz had two brothers-in-law, Herman and Peter Janss of Los Angeles. The interpleader's evidence tends to show that the Janss people had, prior to January 1910, advanced various sums of money to Charles Woelz as loans and that Peter Janss finally took his note dated January 13, 1910, for $10,000 payable $200 a month, and it is said that this note was intended to secure all indebtedness up to $10,000

197 M. A.—44

the Janss people having advanced up to the date of that note $4,638.95 principal and interest. They claimed that they intended to make further advancements to make the total of $10,000. It may be stated here that they made no further advancements (except as will appear presently) and credited on the back of the note the sum of $5,361.05. Nothing was ever paid on this note, not even the interest which the note provided should be calculated and paid annually. It seems that a chattel mortgage on the stock of goods was given as security but that it was never recorded. A few days after the execution of that note another advancement was made of $3,000 which is represented by a note dated January 22, 1910, payable to Herman Janss, which was secured by a deed of trust on the residence property referred to which was not recorded. It is claimed that this $3,000 was furnished to Charles Woelz to buy out the interest G. Woelz, his brother, owned in the store.

It is unnecessary to notice in detail the statements Charles Woelz made from time to time to commercial agencies in which no mention was made of the Janss loans, in one of which he stated that Peter Janss was interested in the business. Nor is it necessary to narrate the evidence to the plaintiff's showing that Woelz by statements made led the banks heretofore mentioned to believe that he had no other indebtedness than what he owed them, nor statements said to have been made by Woelz to the banks that their indebtedness was to be taken care of out of the proceeds of the sale of his residence property whenever he was able to sell it to advantage.

Woelz left Joplin in August 1913 and at the time his deposition was taken he was a resident of Los Angeles.

As stated, the deed from Woelz and wife to Braly was a warranty deed, dated December 9, 1913, with no defeasance whatever.

Braly also lives in Los Angeles. His father-in-law's sister married Charles Woelz. Braly is a son-in-law of Peter Janss and brother-in-law of Herman Janss, and

he had a little stock in the Janss corporation of California. He testified that this warranty deed was given to him for the purpose of selling the residence property and applying the proceeds on the account of Charles Woelz with the Janss Company. Quoting: "I have done nothing with the property. They constituted me as trustee to secure these assets. As a stockholder of the Janss company I am interested in it. At the time this deed was given to me I had no knowledge of the claims against Woelz nor of any other creditors than the Janss Investment Company and Dr. Herman Janss. . . . It was intended as an absolute conveyance of the property and I now claim the proceeds of the sale under a trust deed on the same property, for the benefit of Dr. Herman Janss and the Janss Investment Company." Cross-examination: "After getting this deed on December 9, 1913, I have never seen the property. . . . I con't know who is living in it. I didn't know it was leased to a man by the name of Fleischaker. I do not know that Charles Woelz leased it to a man by the name of Fleischaker and collected six months' rent in advance. Have never been in Joplin since then, and have never had any agent there looking after the property since. . . . The consideration for this deed of December 9, 1913, was the book value of the Janss Investment Company—the Janss Company account. I paid no cash myself for this deed, only through the Janss company. . . . I don't know anything about what was done about recording the deed or at whose request it was recorded, and don't recall the date I got it. Something over a year ago, as I remember it. I don't know about the negotiations leading up to its being made, only I heard that such a proposition was to be made, and was asked if I would allow it to be transferred to me. Don't recall whether it was Dr. Herman Janss or Dr. Peter Janss who made that statement. It was one of these and I consented. . . . I had almost forgotten I had the deed to the property. . . . At the time the deed was made, December 9th, I had the understanding with Herman Janss and the Janss company that I was to act as trustee."

Fleischaker testified for plaintiff that he rented the house of Woelz on August 15, 1913, for six months, paying the rent in advance, and that he paid again in advance on December 26, 1913, which paid up to August 15, 1914. He had no dealings with Braly.

About a month after the warranty deed from Woelz to Braly was dated, these banks received from a Los Angeles attorney a proposition that they agree to an assignment on the part of Woelz for the benefit of his creditors to H. H. Braly of Los Angeles as assignee enclosing such an instrument already signed by Woelz, Braly and Herman Janss. Accompanying it was a letter from the attorney in which he gave as a condensed statement of the liabilities the following: Herman Janss, $2,800; Peter Janss, $4,638.95; G. Woelz, $850; John Woelz, $1,500; Citizens State Bank, $1,500; First National Bank of Joplin, $1,863; total, $13,151.93. He listed as assets the stock of merchandise as worth $6,000 and the real estate at Joplin as worth $4,000. The banks refused to enter into this arrangement and it fell through. Braly did nothing under it. It is not shown in the record that anything was due from Charles Woelz to G. Woelz or John Woelz. Soon after this proposition was rejected the stock of goods listed by the attorney as a six thousand dollar asset (and which Woelz had stated to commercial agencies was worth over thirteen thousand dollars) was shipped to Colorado where some of it was sold to the Woelz Brothers clothing store in Ft. Collins and the remainder shipped to Los Angeles and sold to another clothing company, bringing, according to the testimony offered by interpleader, in all a little over $400, which amount was credited on one of the Woelz notes held by Janss people.

It is shown that the loans by these banks to Woelz were made long before he left Joplin in August, 1913, one witness stating that the main loan was made before Woelz bought the Henly property.

As to the claim that this residence property at Joplin was the homestead of Woelz and therefore exempt, it is sufficient to say that Woelz left the state

permanently in August, 1913, and in his deposition gave his residence as Los Angeles, California. There is ampel evidence in the record showing the intent of Woelz to abandon the homestead, and the question of abandonment is one of intent. [Kennedy's Admr. v. Duncan, 157 Mo. App. 212, 137 S. W. 299; Victor v. Grimmer, 118 Mo. App. 592, 95 S. W. 274.] There is no attempt to show that Woelz intended to return. In fact, the question of homestead did not figure in the testimony at the trial as an issue.

Furthermore, it was brougth out by the interpleader in his cross-examination of plaintiff's witness Jenkins that the main loan was made before Woelz acquired this property, and therefore it was not exempt as to such debt. [Sec. 6711, R. S. 1909, Butler and Mullins v. Roer, 163 Mo. App. 283, 145 S. W. 811; Acreback v. Myer, 165 Mo. 685, 65 S. W. 1015; Barton v. Walker, 165 Mo. 25, 65 S. W. 293.]

As stated, no declarations of law were asked or given, so that it is not known on what theory the trial judge proceeded in rendering his finding and judgment, and, in such case, if there is any substantial evidence to sustain the judgment on any theory it must be done.

While it is true that fraud must be proved and is not to be presumed, still the intent to defraud may be deduced from circumstances for in the nature of things it is not susceptible of direct proof. Appellant cites authorities to the effect that the fact that an insolvent debtor prefers his relatives as creditors does not of itself show fraud, yet, as held in State Bank of West Union v. Keeney, 154 Mo. App. 285, 133 S. W. 855, where the evidence of the relationship of the parties, the circumstances surrounding them, and the unusual pecularities of the transaction in question, is of a nature to induce a reasonable mind to believe that fraud was the common object of the parties, an issue of fact is raised to be determined by the trier of the facts. We think the relationship of these parties, coupled with all the circumstances detailed, furnish satisfactory evidence of fraudulent intent in this conveyance from Woelz to

Braly the plain effect of which was to cover up the fact that Woelz had in this way preferred his relatives as creditors and thus mislead his other creditors. As tated in the brief of the defendant in error the fact that all these parties were related, that they only claim to have loaned Woelz a little over seven thousand dollars yet hold his notes for thirteen thousand dollars, that Woelz was to pay off the indebtedness at $200 a month and only made one payment, that although interest was to be paid annually they never collected a cent of interest, that although a deed of trust was given on his home and a chattel mortgage on his stock of goods they were never recorded, that although it was claimed the value of this stock of goods ran into the thousands it finally brought according to their testimony only a little more than four hundred dollars— all this, coupled with the falsehoods, verbal and written, of Woelz, and the apparent unconcern of Braly with reference to his so-called trusteeship to the extent that he ignored the property entirely, didn't know who was living in it or anything about it and failed to even ascertain that Woelz was collecting rent on it after the absolute title was in Braly, taxes human credulity to the limit, and we will not condemn the action of the trial judge in holding that the plaintiff successfully sustained the burden of proof.

We think this deed of December 9, 1913, purporting to convey the absolute title to Braly was void as to attaching creditors in view of Braly's testimony that it was not in fact what it appeared on its face to be because of a secret understanding that he was to merely take it as trustee for the benefit of the Janss people. Braly testified that this deed was not given to secure the indebtedness but to help pay it off, that he didn't know what would become of the surplus, if any, under this arrangement, that he didn't know anything about any equity Woelz might have in the surplus, if any, and that he supposed it would be up to Herman and Peter Janss to say what would become of it. While under the facts of this case the Janss indebtedness ap-

pears to have been great enough to have exhausted the proceeds of the property in question, the Janss people held a chattel mortgage on the stock of goods which they valued at $10,000 and it was altogether probable at the time this warranty deed was made that when the assets of Woelz were reduced to cash there would be a surplus over and above the Janss indebtedness, so that the case, arguing upon this theory, is brought within the doctrine as to secret trusts. [See, Martin v. Estes, 132 Mo. 402, 28 S. W. 65, 34 S. W. 53; Rock Island National Bank v. Powers, 134 Mo. 432, 35 S. W. 1132; Molaska Manufacturing Co. v. Steele & Walker, 36 Mo. App. 486.] As pointed out in the case last cited, such secret agreements tend directly to hinder and delay creditors; they hold out false colors and false appearances and mislead and deceive creditors; they give to the property of the vendor the appearance of belonging wholly to another, when in truth, he has an interest in it, concealed under the trust. "The law condemns such secret trusts as fraudulent and avoids the entire transaction, regardless of the actual good faith of the parties thereto. . . . Neither will the creditor, acting as the secret trustee for the benefit of the insolvent debtor, be saved from the consequences, by a showing that his claim equalled, or exceeded in value, even, the property so taken in trust."

The assignment of error that the court erred in admitting incompetent evidence is not briefed except for a short paragraph at the close of the argument where it is said that the interpleader at the trial objected to evidence of statements made by Woelz to Jenkins and Becker and Dufflemyer which objections were overruled and exceptions saved. There are other reasons which might be given for overruling this assignment but it is enough to say that the testimony claimed to have been improperly admitted is not pointed out by the plaintiff in error; the appellate court should not be compelled to search through the testimony of witnesses and weigh every objection that may have been made. [Tuttle v. Davis, 48 Mo. App. 109; Gardner v.

Robertson, 208 Mo. 605, 106 S. W. 645.]   At no place, not even in the motion for a new trial is there a lead to show just what objections appearing in the testimony of those witnesses are relied on for reversal. Plaintiff in error has failed to show wherein such evidence was incompetent, and as the case was tried before the court without a jury it is presumed that the court in determining the case considered only such evidence as was competent and relevant so that it is not likely that prejudicial error was committed. [See, Lewis v. Frankie, 158 Mo. App. 262, 138 S. W. 64; Hatch v. Bayless, 164 Mo. App. 216, 146 S. W. 839.]

The judgment is affirmed.  *Cox. P. J.* and *Sturgis, J.,* concur.